ELIJAH A. BILL *vs.* BENJAMIN C. SMITH AND OTHERS.

When a vessel in motion comes into collision with one at anchor, the presumption is that the former is in fault, and she can exonerate herself only by showing that it was the fault of the vessel at anchor or caused by circumstances utterly beyond her control.

This is a rule of admiralty, but is applied by courts of common law.

A dredging machine was anchored outside of, but close to, the channel of a navigable river, with an outrigger extending three feet over the channel, but ample room was left for the passage of vessels in the channel. A steamer going up the river by daylight in fair weather ran against the outrigger and damaged the dredging machine. In a suit brought by the owner of the latter against the owners of the steamer, the court below found the facts, but did not find the defendants guilty of negligence unless the law would infer it from the facts, and found that the plaintiff was not guilty of want of care unless to be inferred from the facts. Held—1. That the degree of care which the defendants were bound to exercise was the highest degree. 2. That the burden of proof as to the exercise of such care was on the defendants, and as the fact was not found in their favor the law would presume their negligence. 3. That the law could not upon the facts infer want of care on the part of the plaintiff.

It seems that where the captain of a steamer is acting at the same time as pilot and look-out, the vessel has not a proper look-out, and the owners would be liable for any injury caused by such omission.

TRESPASS on the case for an injury to a dredging machine of the plaintiff caused by the negligence of the defendants; brought to the Superior Court in New London County, and tried on the general issue closed to the court. The court re-

served the case for the advice of this court upon the following finding of the facts by the judge:

About eleven o'clock in the forenoon of the 18th of October, 1868, the defendants' propeller ran into a mud-digger or dredging machine belonging to the plaintiff. On the afternoon preceding the accident the mud-digger was properly secured by means of spuds on the east side of the river Thames. A single timber called the outrigger projected its length of about three feet into the channel, the entire body of the machine being out of the channel at its edge. The collision was against this outrigger. The defendants claimed that the plaintiff was guilty of some neglect in leaving the mud-digger thus exposed; but the channel there being about two hundred feet wide, I find that the plaintiff was in no default in this respect unless the law implies neglect under the circumstances.

The plaintiff was engaged in deepening the channel of the river under a contract with the government, and owned another mud-digger which was anchored on the same side of the river from two to three hundred feet below the one injured, and opposite the lower machine a schooner was lying aground a little west of the middle of the channel. The propeller was coming up the river, and on nearing the schooner she checked her speed and passed slowly and in safety between the schooner and lower mud-digger. When she had thus passed she turned her course to the left in order to regain the centre of the channel and avoid the upper machine, still moving quite slowly. When nearly opposite the machine she suddenly took a sheer to the right and came in collision with the outrigger and did the damage complained of. The captain of the propeller was all this time at the wheel, and as soon as he felt the sheer of his vessel he rang the bell to slow, and then to back, and did all that could then be done to avoid the collision. The captain was an experienced seaman, and from the time of nearing the schooner to the time of the collision acted as captain, pilot and look-out, there being no person specially engaged as a look-out.

The principal question in the case was, how it happened

that the propeller came to take the sheer she did take. The defendants offered evidence tending to show, and claimed, that the vessel struck a mud bank or shoal water and became uncontrollable, and by mere accident did the damage. The plaintiff offered evidence tending to show, and claimed, that the captain's attention was withdrawn from the management of his vessel by an attempt to give a line to the schooner and tow her up the river, and that the collision was caused by his want of care and attention and by the want of a look-out. On a careful examination of the testimony I cannot satisfy my own mind as to what the true cause of the accident was.

I do not find affirmatively any want of care or skill in the management of the propeller to which the injury can be traced, unless such want of care and skill may legally be implied and inferred from the facts aforesaid, and from the further fact that the collision occurred in daylight, in fair weather, and where the channel of the river is of ample width.

If judgment is advised for the plaintiff the damages are assessed at $500, and interest from October 18th, 1868.

*Hovey* and *Halsey*, for the plaintiff, cited, as to the presumption in such a case against the ship in motion, and her duty to exonerate herself, *The Lochlibo*, 1 Eng. L. & Eq., 651; *Culbertson* v. *Shaw*, 18 How., 584; *The Granite State*, 3 Wall., 310; *The Bridgeport*, 7 Blatchf. C. C., 361; *The Helen R. Cooper*, id., 378; *The D. S. Gregory*, 6 id., 528; *The Brig Beaver*, 2 Benedict, 118; *The Ferry Boat Baltic*, id., 452; *The Steamship Cella*, 3 id., 171; 1 Parsons' Mar. Law, 201, and note 8; *The Julia M. Hallock*, Sprague, 539. And as to the necessity for a look-out, *The Propeller Genesee Chief* v. *Fitzhugh*, 12 How., 443; *The Northern Indiana*, 3 Blatchf. C. C., 105; *The St. John*, 7 id., 224; *S. C.*, 2 Benedict, 192; *The Ottawa*, 3 Wall., 268; *The Hypodame*, 6 id., 216; *The Brig Emily*, Olcott, 137; *The Pilot Boat Blossom*, id., 193; *The Rebecca*, Blatchf. & Howl., 351; *The Batavia*, 40 Eng. L. & Eq., 19.

*Wait* and *Pratt*, for the defendants.

1.   Negligence is a question of fact and not of law.   The plaintiff was bound to show affirmatively that the damage was caused by the negligence of the defendants.   If it resulted from the absence of a proper look-out, then that should appear both by proof from the plaintiff and by the finding of the court.   *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566 ; *Williams* v. *Town of Clinton*, 28 id., 264.   But the plaintiff failed to prove this.   In fact, he failed to prove to the court *any negligence* on the part of the defendants, which caused the accident.   The judge says, " I cannot satisfy my own mind as to what the true cause of the accident was."   Could he state in any stronger language that the plaintiff had failed to prove his case ?   If the absence of a look-out had, in the opinion of the judge, been the cause of the accident, or if there had been any negligence, *in fact*, imputable to the defendants on that account, he would have had no difficulty in finding affirmatively some " want of care and skill in the management of the propeller."   The fact that he refuses so to find shows that, in his opinion, the absence of a look-out had nothing to do with the accident.   The other parts of the finding reach the same conclusion.   There is no hint that a look-out would have helped in any manner to avert the accident.

2.   There is no imperative rule of law, even in admiralty, that subjects a vessel in damages for the absence of a technical look-out, unless the circumstances of the case show that the accident may have been attributable to that cause. 1 Parsons Mar. Law, 195 ; *Mellon* v. *Smith*, 2 E. D. Smith, 462.

3.   Were the rule in admiralty such as the plaintiff claims, this would not affect the present case, which is governed by the rules of the common law.   The rights of the defendants would be different under admiralty law.   By that law, in this case the damage would either rest where it fell, or be divided between the parties,—for on the finding of the court it would be an " inscrutable fault,"—a damage, the cause of which cannot be ascertained.   1 Parsons Mar. Law, 188 ; and note, and cases cited.

CARPENTER, J.　The facts of this case are few and simple. The principles of law involved are familiar and well settled. The only difficulty arises in their application.　In admiralty the rule is that when a vessel in motion comes into collision with one that is at anchor, the presumption is that the former is in fault; and she can only exonerate herself by showing that it was the fault of the vessel at anchor, or the result of circumstances utterly out of her power to control.　1 Parsons Mar. Law, 201, and cases there cited.　Both parties substantially concede this to be the rule.　The same rule prevails in the common law courts, whenever they are called upon to administer justice in cases of this character.

But the defendants claim that the presumption is one of fact, and not of law; and that the plaintiff cannot recover, inasmuch as the court below has not found, in terms, that the defendants were guilty of negligence; that negligence is a question of fact, and as the Superior Court has not found it as a fact, this court cannot say, as matter of law, that negligence exists.　They cite in support of this position *Beers* v. *Housatonic Railroad Co.*, 19 Conn., 566, and *Williams* v. *Clinton*, 28 Conn., 264.

Negligence, in a legal sense, is the omission of some duty imposed by law.　The law determines what the duty is; the evidence in a cause determines whether it has been omitted. The former is a question for the court; the latter for the jury. To illustrate: the *law* requires that when two persons, in carriages, meet each other upon the highway, each shall turn to the right.　Whether he does so or not is a question of *fact*. The *law* requires that a man shall in all cases act with reasonable care; what is reasonable care, and whether a man so acts, are questions of *fact*.　Cases often arise in which the facts and circumstances are so numerous and complicated that it is difficult for experienced lawyers and judges to tell what a man's duty is.　Some of the alleged facts upon which the duty depends may be in dispute.　When determined by a jury the court can declare the duty; and then the jury again are to determine whether the duty has been omitted.　Thus it often happens that negligence in a given case depends so

much upon what the law requires, and what the law requires depends so much upon particular facts and circumstances, that it is said that negligence is a mixed question of fact and law. In strictness, however, questions of law and fact in such cases, though intimately connected, and dependent upon each other, are separate and distinguishable from each other; and it is the duty of the court, in jury trials, so to distinguish them that the jury can perceive clearly what they have to pass upon, and the court, when called upon to try both questions, will experience little difficulty if the two are kept entirely distinct in the mind. Thus it will be seen in what sense, and to what extent, negligence is a question of fact.

The duty which the law imposes upon a man varies widely according to the circumstances in which he is placed. In some circumstances slight care will exonerate him from blame; in others ordinary care is required; in others still, the law requires the utmost care and holds him responsible if he fails to exercise it. The last class embraces the case now before us.

What duty then devolved upon those on board the propeller? The answer is apparent; to use the utmost care to prevent a collision; to pass safely, unless prevented by circumstances utterly out of their power to control. The case of *The Fannie*, 11 Wallace, 238, was where a steamer and schooner were approaching each other on nearly parallel lines. Mr. Justice STRONG, in giving the opinion of the court, says: " The steamer was bound to keep out of the way of the schooner, and to allow her a free and unobstructed passage. Whatever was necessary for this it was her duty to do, and whatever obstructed or endangered the schooner in her course it was the duty of the steamer to avoid."

The plaintiff having proved that his own vessel was at anchor, and that the defendants' propeller, in attempting to pass it, came into collision with it, he established a *primâ facie* case, and was entitled to a judgment unless the defendants could show, either that the collision was occasioned by the fault of the plaintiff, or that it was the result of circumstances utterly out of their power to control. The burden

of proof changed and was on the defendants. We think they have failed to establish their defence.

As the dredging machine was at anchor, and powerless either to cause or avoid a collision, the law imposed no duty upon it, and consequently no negligence can be imputed to it, unless it was anchored in an improper place. . The court expressly finds that the plaintiff was in no default in this respect, unless the law implies neglect under the circumstances. But the law implies no negligence unless it is clear that some legal duty has been omitted. It was the plaintiff's duty certainly to leave ample room in the channel for the steamer and all other vessels to. pass safely. This he did, and the court has so found. He had no right to put any unreasonable obstructions in the channel. We cannot say as matter of law, that the very small fraction of the channel occupied by him was unreasonable under the circumstances.

It only remains to inquire whether the defendants have shown that the collision resulted from circumstances beyond their control.

It is found that after the propeller " suddenly took a sheer" towards the machine, all that could then be done to avoid a collision was done. But the all-important question is, what 'caused the propeller to take a sudden turn ? That question the learned judge, who tried the cause in the Superior Court, was unable to answer. He could not say from the evidence, that the defendants might not, by the use of such diligence as the law required of them, have prevented the sudden turn. Nor does he find that they could. But the burden being on the defendants, the defence fails.

A question is made respecting a look-out. It is conceded that the law made it the duty of the defendants to have a competent and proper look-out on board the propeller. A person acting as " captain, pilot and look-out " at the same time, is not a proper look-out. *The Ottawa*, 3 Wallace, 268 ; *The Hypodame*, 6 Wallace, 216. There being no other person engaged as a look-out, the defendants clearly neglected their duty in this respect. But it is not certain that the accident was the result of that neglect. If it was, the liability of the

defendants could not be questioned. If it was certain that it was not, the defendants would not be liable on that ground. If this was a turning point in the case, it would be material to inquire on which party is the burden of proof? Must the plaintiff, as in ordinary cases of negligence, prove that the injury was in consequence of the negligence? Or will the law, upon proof of the negligence and the injury, presume that the one was caused by the other, and throw upon the defendants the burden of proving the contrary? But we deem it unnecessary to consider this question, as the presumption of law is, upon the whole case, that the defendants' negligence, in this or in some other way, caused the injury. As they have failed to remove this presumption, we advise the Superior Court to render judgment for the plaintiff.

In this opinion the other judges concurred.