## EDWARD E. MARTIN
### *vs.*
## E. H. LOTZ.

Superior Court          Middlesex County          File No. 7751

MEMORANDUM FILED JULY 13, 1939.          126 Conn. 529

*Parmelee & Thompson*, of New Haven; *Carlos B. Ellis*, of Middletown, for the Plaintiff.

*Thomas C. Flood*, of Middletown, for the Defendant.

BOOTH, J. The action is to recover for injuries to the plaintiff's boat, which on September 21, 1938, was damaged while moored in the waters of a cove of the Connecticut River at Essex, Connecticut. The damage is alleged to have been

caused by a collision between the plaintiff's boat and one owned by the defendant, which collision is alleged to have been due to the breaking away from its moorings of the defendant's boat during a severe storm, which so tossed it about as to cause it to batter and beat against the plaintiff's boat.

The breaking away and damage by the defendant's boat is alleged to have been due to the negligent manner in which it was moored, in that "one of the two ropes by which it was moored was and always has been of inferior quality and insufficient, even when new, for proper mooring of the defendant's said cruiser; in that said rope was old, worn, frayed, pulpy, weak, badly weathered, having broken strands, and was wholly insufficient to properly and safely moor the defendant's said cruiser; and in that the defendant's said cruiser was moored with its square stern eastward in a manner most likely to put the greatest strain on said rope from waves coming inland; and in that said boat was too tightly moored with insufficient slack in its mooring ropes for conditions reasonably to be expected at that time."

The defendant denied any negligence as alleged and affirmatively set forth by way of special defense that the breaking away of his boat was the result of an act of God, which consisted of an extraordinary storm and hurricane and an unusual, unprecedented condition of the weather, wind and tide.

This special defense was denied by the plaintiff and thus upon the pleadings the parties were at issue.

The evidence disclosed that on September 21, 1938, both boats were moored about 200 feet from shore in North Cove, so-called, which is located on the west side of the Connecticut River, in the Town of Essex; that each was moored between two dolphins with bow and stern lines; that the plaintiff's boat was to the north of defendant's; that its bow pointed south and the bow of defendant's boat pointed north; that the bow line of the plaintiff's boat pointed north; that the bow line of the plaintiff's boat and the bow line of the defendant's boat were attached to the same group of piles which formed one of the dolphins, while the stern line of the plaintiff's boat was attached to another dolphin to the north thereof; and that the stern line of the defendant's boat was attached to still another dolphin to the south of the aforesaid central dolphin. The mooring lines of the plaintiff's boat consisted of manila rope seven-eighths of an inch in diameter, in good condition. There was

no evidence concerning the character and size or condition of the mooring lines of the defendant's boat.

At 1:30 p.m. on September 21, 1938, both boats were moored in the positions as above described and as they ordinarily and customarily had been for some time previously. At that time an extraordinary tropical hurricane of unprecedented character was in progress, with the wind blowing from the southeast. At 3:30 p.m. the wind attained a velocity of more than seventy-five miles an hour and the water in the cove began to rise rapidly as it was blown up the river from Long Island Sound. After 3:30 p.m. the storm continued. The force of the wind increased until it reached a velocity of 115 miles an hour. Mountainous seas developed in the river and the water in North Cove rose four to five feet in forty-five minutes and eight feet in five hours, reaching about twelve feet at the crest, which occurred at 8 o'clock p.m. This sudden and extensive rise of water was unusual in that vicinity.

During the storm fifty-seven boats which were moored in the river to the south of North Cove were set adrift, as were twenty out of twenty-seven which were moored in the river just east of North Cove, and several were blown into the cove.

At 3:30 p.m. the stern of the defendant's boat failed to hold in its original position but swung to the north with its bow pointing to the south, and though still attached by its bow line to the aforesaid central dolphin, its left or port side came in contact with the right or starboard side of the plaintiff's boat, and the subsequent action of the wind and waves caused the two to so batter together as to injure the right side of the plaintiff's boat to a considerable extent.

During all of this period the plaintiff's boat remained moored in its original location and it is found that the plaintiff was not negligent either in the manner or location of its mooring. Whether the stern line of the defendant's boat became unfastened or broke, or whether the dolphin to which it was attached became dislodged, did not appear in evidence. Whether the lines of the defendant's boat were of rope, chain or wire cable did not appear. Nor did the length, size or condition of said lines appear. Nor did it appear in what manner they had been attached to the mooring posts. In short, there was no direct evidence of any negligence on the part of the defendant in respect to his mooring his boat as he did. This boat, however,.

moved from its original mooring place, while the plaintiff's boat did not.

The plaintiff claims that because his boat was shown not to have been moved from its mooring and that because the defendant's boat was in motion when it came in contact with the plaintiff's boat, there is a presumption that the contact was due to the negligence of the defendant, which, if not overcome by evidence on the part of the defendant, requires a finding of negligence against him.

In support of this claim the plaintiff cited several Federal cases and the case of *Bill vs. Smith,* 39 Conn. 206, wherein the rule is laid down that when a vessel in motion comes into collision with one which is at anchor, the presumption is that the former is at fault, and she can only exonerate herself by showing that it was the fault of the vessel at anchor, or the result of circumstances utterly out of her power to control.

That such is the law there can be no question and it only remains to inquire whether the defendant has shown that the collision resulted from circumstances beyond his control. He has shown the existence of an unprecedented hurricane, which in a sense was an act of God and beyond the power of man to control and which had some effect upon the movement of his boat from one of its moorings, but whether this was the sole cause of the damage to the plaintiff's boat, does not appear from the evidence. *Pleasure Beach Park Co. vs. Bridgeport Dredge & Dock Co.,* 116 Conn. 496.

The rule of presumption above stated places the burden upon the defendant.

In the absence of evidence to the contrary it must be and is found that his negligence contributed proximately to the damage to the plaintiff's boat, which is found to be $446.38.

Judgment is therefore entered for the plaintiff upon the issues of the complaint and for the plaintiff to recover of the defendant $446.38 damages and costs.