pellant, that the answer was insufficient to raise a material issue touching the allegations of the complaint (Abb. Tr. Brief Pl. §§ 585, 587); but it is inconceivable that the plaintiff was harmed because he was constrained to prove what was already admitted. The only issue litigated was that of payment, and there is nothing in the record to indicate that the plaintiff was forced to assume, or that he did assume, the burden of proof with regard to that defense. Indeed, it appears that he did not do so, and the court properly instructed the jury that the burden of proof of payment was upon the defendant. The only effect, therefore, of the ruling that the affirmative was with the plaintiff, was to· deprive the defendant of his right to begin and conclude, and to bestow the advantages to be derived from the exercise of the right upon the plaintiff. The beginning and conclusion in a judicial trial has been uniformly regarded as an advantage (17 Am. & Eng. Enc. Law, pp. 194, 603, "Onus Probandi"), and only the denial of the right to present ground for reversal (1 Thomp. Trials, § 226, note 2, and cases cited.) The bestowal of the advantages, where the right thereto does not exist, cannot therefore afford a valid ground of complaint. Mere error is never sufficient to warrant the interference of the appellate court. The error for which a reversal is to be directed must be one which operated prejudicially to the appellant. Tracey v. Altmyer, 46 N. Y. 598, 604; Appleby v. Bank, 62 N. Y. 12, 18; Carman v. Pultz, 21 N. Y. 547; Briant v. Trimmer, 47 N. Y. 96. Judgment of the general and trial terms of the court below affirmed, with costs.

---

(9 Misc. Rep. 282.)

### CANNON v. BROOKLYN CITY R. CO.

(City Court of Brooklyn, General Term. June 25, 1894.)

OPINION EVIDENCE—NONPROFESSIONAL WITNESS.
  It is not calling for an opinion, in a technical sense, to ask a nonprofessional witness how a person with whom he is intimately acquainted looked in respect to health at a certain time.

Appeal from trial term.

Action by Annie Cannon against the Brooklyn City Railroad Company for personal injuries. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

Morris & Whitehouse, for appellant.

Chas. J. Patterson, for respondent.

VAN WYCK, J. This is an appeal from an order denying a motion for a new trial, and from a judgment entered upon a verdict for $12,500, in favor of plaintiff, for personal injuries claimed to have been caused by the negligence of defendant. The appellant insists upon a reversal for many reasons, which, taken up in their order as presented in the points, bring us first to the consideration of whether the verdict is excessive. Upon a critical examination

of the testimony, we find evidence which the jury were justified in believing, and which establishes that plaintiff received injuries in this accident, to her womb, bladder, ovary, and surrounding parts, of a most serious character, causing her great pain and suffering, and disabling her for the performance of the ordinary duties and work which she had been accustomed to do before the accident; that there has been a falling, retroversion, and retroflexion of the womb, and inflammation of the surrounding parts; and that the injuries to her genital organs are permanent and incurable. This court does not disagree with the jury in its estimate of a fair and just compensation for such serious injuries. No error can be predicated upon the exception at folio 58, for it was proper for plaintiff to show that her injured·womb had become enlarged; none upon the one at folios 70 and 71, because the question was not answered; none upon those at folios 76–78 and 282, for it was especially proper for the expert physician, who examined the displacement, falling, retroversion, and retroflexion of her womb, to testify as to whether the injury was recent or of long standing, and as to whether it was curable or incurable (Lindsay v. People, 63 N. Y. 143; Buel v. Railroad Co., 31 N. Y. 314, 320; Filer v. Railroad Co., 49 N. Y. 42); none upon the one at folios 91–93, for it was shown that, after the accident, her menstruation was stopped for two months, and she certainly had the right to testify that on its return she suffered great pain and spasms; none upon those at folios 184 and 185 and 277–279,—the pessary, which is sometimes used successfully to support a falling womb, had been tried, and with benefit to her for a time, but it finally caused her so much pain that its use was discontinued, and this rendered it proper for the expert physician to explain that the pessary pressed upon the walls of the vagina while supporting the womb, and that, in the condition of the parts surrounding the womb, it was inadvisable to use this instrument; none upon those at folios 186, 189, 190, 285, and 289,—if some of the facts assumed in the hypothetical questions were not justified by the proof, then the objecting counsel should have called the attention of the court to the assumptions which he deemed unwarranted, and this he failed to do (Hall v. Crouse, 13 Hun, 557, 562), and, besides the assumptions seem to have been within the probable range of the evidence (Harnett v. Garvey, 66 N. Y. 641; Stearns v. Field, 90 N. Y. 640); none upon that at folio 236, for the expert physician can properly testify that a blow upon the stomach is sufficient to cause a retroversion of the womb (Turner v. City of Newburgh, 109 N. Y. 301, 309, 16 N. E. 344; Stouter v. Railway Co., 127 N. Y. 661, 27 N. E. 805); none upon those at folios 301, 302, 305, 307, 316, 321, 323, 329, 335, 342, 345.

The objection urged is that a nonprofessional witness cannot be asked how a person with whom he is intimately acquainted appeared or looked in respect to health at a certain time, on the ground that it calls for an opinion, and that he is not an expert. It seems to us that the answer does not call for an opinion in the technical sense claimed, but for a fact that the ordinary·human being can an-

swer intelligently. We will examine what was brought out by such questions in one or two instances, as an illustration of the usefulness of such evidence. At folios 301 to 304, the witness Crawly, who lived in the same house with her, and saw her frequently, testified that he "noticed she was a healthy woman, apparently." "Saw her doing her work   *   *   *   in the household,   *   *   *   do laundry work, household work,   *   *   *   carry breakfast to her husband,   *   *   *   going about. She has always had quite a rosy complexion; that is, before this accident.   *   *   *   Have not seen any rosy complexion on her since the 16th of September, 1892." At folios 304 to 307, the witness Hunt testified that he saw her daily for a time, before and after the accident. This question was put to him: "Q. Down to the 16th of September, 1892, what was her general appearance as to healthfulness? A. Good. The complexion which Mrs. Cannon usually had was strong and hearty. I have seen her since. I have seen a difference in her as to color of face, I mean, a big change,—pale, delicate, unhealthy, as to the looks of her face." At folios 307 to 310, the witness Hannon, in response to a similar question as to her appearance, testified that, before the accident, she was "a stout, healthy woman, with a healthy color," and, after the accident, "not near so stout," and "her color is almost gone." We think this evidence was both competent and material. Lawson, Exp. Ev. pp. 470–473; Hewlett v. Wood, 55 N. Y. 634. Judgment and order affirmed, with costs.