WILLARD BARTLETT, J.
The plaintiff, a physician 4(> years of age, has recovered a verdict of $8,000 for injuries received on the 21st day of March, 1892, in consequence of a collision on Ninth avenue, near Third street, in the city of Brooklyn, between the phaeton in which he was driving and a truck alleged to have been negligently driven by the servants of the defendant. The vehicles were proceeding in different directions, and in accordance with evidence in behalf of the plaintiff, they would have passed one another without accident if the truck had continued to move upon the 'same line as it was moving along when first closely observed by Dr. Quinn. He testified that there were two men on the truck, one of which held the reins, while the other had a whip, which he was plying to the team ; that they were driving rapidly, and appeared to be partially intoxicated *575 and that as they approached him the truck made a sudden lunge to the left, and ran into the forward part of his phaeton, throwing him out into the street. There was testimony to the effect that, the fall had resulted in a progressive malady of the spinal cord, from which it is reasonably certain that the plaintiff will never recover. The appeal book is very voluminous, and the brief for: the appellant covers nearly 60 printed pages. The questions, raised and discussed are very numerous, but have all been carefully examined. It will be conducive'to clearness to consider them in the order in which they are presented by the appellant.
The appellant contends, in the first place, that the plaintiff was-negligent on his own showing, regardless of the law of the road, and ai’gues that the approaching truck was visible at so great a. distance that the plaintiff ought to have turned out to avoid it. The answer to this is that, if the truck had kept on in the line on which it was going, there would have been no collision, and the plaintiff was not bound to anticipate that the team would beslmrply turned to the left, in the manner which caused the accident.
In the next place, it is earnestly insisted that the plaintiff was-guilty of contributory negligence, bedause he violated the law of the road. Section 157 of the highway law provides as follows:
“ Whenever any persons travelling with any carriages shall meet on any turnpike road or highway, the persons so meeting shall seasonably turn their carriages to the right of the center of the road, so as to permit such carriages to pass without interfer-: ence or interruption, under the penalty of five dollars for every neglect or offence, to be recovered by the party injured.’’ Laws 1892,_c. 568.
This enactment is derived from the Eevised Statutes. There is no doubt that the plaintiff’s vehicle was somewhat to the left of the middle of the line of Ninth avenue when the collision with the defendant’s truck occurred. In Smith v. Dygert, 12 Barb. 613, it was held that the center of the road, when obscured by snow, was the center of the beaten or traveled track, without reference to the worked part. In Baring v. Lansingh, 7 Wend. 185, the dividing line contemplated by the statute was declared to be the center of the worked part of the road, “ unless the situation of the road :s such that it is impracticable, or extremely difficult, for the party to turn out.” The learned trial judge charged, in various forms, that the plaintiff must show that the space to his right was impassable, in order to free himself from contributory negligence in being to the left of the middle of the road. This was a. statement of the law more favorable to the defendant than he was-entitled to require. .The true rule is that a violation of the law of the road, while evidence of negligence, is not conclusive. It has been held in Massachusetts, Maine, Connecticut, and other states, that the mere fact that the plaintiff at the time he received the injury was on the wrong side of the road, instead of being on that prescribed by the statute, will not prevent him from recovering damages. Smith v. Inhabitants, 321 Mass. 216 ; Bigelow v. Reed, 51 Me. 325, 334; O'Neil v. Town of Bast Windsor, 63 *576 Conn. 150, 27 Atl. 237. In the case of Riepe v. Elting, 89 Iowa, 82, 85, 86, N. W. 288, there is a very full and satisfactory review of the decisions on this branch of the law, which concludes with this declaration:
“ The general rule seems to be that, when a collision occurs between the horse or vehicle of a person on the wrong side of the road and of a person coining towards him, the presumption is that it was caused by the negligence of the person who was on the wrong side of the road, but that his presence on that side may be ■ explained and justified.”
The presence of the plaintiff to the left of the middle of Ninth avenue in the present case was amply justified, if it was true, as he stated under oath, that the street to his right was impassable.
The learned counsel for the appellant next argues the validity of nineteen exceptions to the rulings of the trial court in regard to the admission and exclusion of evidence. These exceptions I will discuss in their numerical order:
(1) The testimony of plaintiff to the effect that, in his best judgment, the men on the truck were partially intoxicated, was properly admitted. People v. Eastwood, 14 N. Y. 562.
(2) There was no error in permitting the plaintiff to testify that, if the men on the truck had continued upon the line they were on before the truck made the lunge, they would have passed him at a distance of about three feet. This was only an indirect way of stating what was the position of the truck, and in what direction it was moving, at the time to which the statement referred.
(3) It was proper to receive the evidence which the plaintiff gave as to the difference in his weight before and after the accident. Whether the change was due to any injurious effects of the accident or not was a question for the jury.
(4) After testifying to certain symptoms which the plaintiff exhibited, Dr. Lewis L. Pilcher was asked whether he was able to state with reasonable certainty from what part of the body the condition proceeded which created these difficulties. There was an objection to this question, the objection was overruled, the defendant excepted, and the witness answered, “ These symptoms arise,—the peculiar irritable symptoms arise,—and indicate a disordered condition of the lower portion of the spinal cord.” Strictly speaking, the question called for a categorical answer, “Yes” or “No,” and was unobjectionable; but, assuming that it added the witness for his opinion as to what the symptoms indicated in respect to the part of the body which was affected, we cannot see why it was not proper. The inquiry related to a matter of medical skill, knowledge, and experience, and was addressed to a physician who had himself examined the plaintiff after the injury.
(5) On cross-examination Dr. Pitcher was asked whether he could state positively to the jury that, if one or the other of two assumed conditions existed, it would produce that condition, without speculation, and from his knowledge of the case as a physician and surgeon. Hh answered; “ A physician or surgeon has very little postive knowledge. He gives his judgment. I can give my judgment in this case. That is all.” A motion was made by the de *577 fendant’s counsel to strike this answer out, but the court denied the motion, saying that the answer might stand by was of explanation, to which ruling the defendant duly excepted. It is argued that the witness was thus permitted to give additional force to his testimony, to the injury of the defendant, but I cannot per-eeive that the answer could have had any such effect. On the contrary, it tended to show .that the witness, who had been called by the plaintiff, could say very little of his own positive knowledge about the case. How such -a statement could harm the defendant, I cannot understand.
(6) The ruling that the court could not compel a expert witness to give a categorical answer to a question of opinion evidence, which the witness said he was unable to answer categorically, was correct. The question was not in such a form as to justify the court in holding that the professed inability of the witness to give a categorical answer was untruthful.
(7) Dr. Pitcher, in the course of his cross-examination was asked whether sitting in one position for a long time sometimes occasioned numbness of the limbs. The witness answered, “Not necessarily,” This response gave rise to a long colloquy between the witness, counsel, and the court, resulting finally in the statement by the witness that there must be something else besides the sitting in one position to cause the numbness. This explanation disposed of the exceptions taken in behalf of the defendant in the ■course of the discussion over the matter.
(8) Speaking of the street on which the accident occurred, plaintiff’s counsel asked Dr. Pitcher whether there was snow when he drove over it in his carriage at other times-than on the day when the plaintiff was injured. The exception to the allowance of this question, if it had been good otherwise,' was rendered unavailing .by the answer, because the witness responded that he did not remember whether he had ever driven over the street when there was snow or not.
(9) Objection was made and exception taken to the allowance of a hypothetical question to Dr. Pitcher, which assumed that the plaintiff had sustained a wrenching of the spine, and had developed an exaggerated reflex in the muscles of the legs, and a numbness proceeding from some spinal disorder. The objection was based on the ground that the question assumed a state of facts that had not been proved. The question, however, came fairly within the rule that an interrogation of this kind is unobjectionable if the assumptions contained in it are within the probable or possible range of the evidence. Harnett v. Garvey, 66 N. Y. 641; Stearns v. Field, 90 id. 640.
(10) After Dr. Pilcher had answered the hypothetical question above mentioned by saying that he would ascribe the difficulties in the plaintiff’s limbs to a disturbance in nutrition and circulation in the lower part of the spinal cord, lie was asked to assume the same facts again, end state to what he would attribute that disturbance “ in the absence of any other known cause.” The witness answered, over objection and exception by the defendant, “It *578 ■was caused by the accident received three years before.” It was argued that the plaintiff’s counsel had no right to assume the absence of other causes, but I think he could properly do so, in view of the plaintiff’s testimy, subsequently given, to the effect that he knew of no other cause which could have occasioned his sufferings. Furthermore, the question was equivalent to the asking ■whether the accident described in the hypothesis was capable of producing such physical results, and1 in that view it was also-proper.
(11) The testimony of the same witness that a fall from a carriage could produce such a wrench to the backbone as he had described was also admissible. It is the constant practice of the courts, in this class of cases, to admit “the expressions of opinions by competent medical experts upon an ascertained physical condition of suffering or bad health, as to whether that condition might have been caused by, or be the result of, a previous injury.” Turner v. City of Newburgh, 109 N. Y. 301, 308; 16 N. E. 814.
(12) The succeeding question, as to whether such a wrench did not sometimes involve some sort of disorganization of the spinal cord or its coverings, was not objectionable, under the Strohm or Alberti Cases (Strohm v. Railway Co., 96 N. Y. 305; Alberti v. Railway Co., 118 id. 77; 23 N. E. 35). Clegg v. Railway Co., 1 App. Div. 207, 210; 37 N. Y. Supp. 130. The purpose was merely to show that the wrench which the plaintiff claimed to have received -was capable of producing the condition of the spinal cord indicated by the plaintiff’s symptoms.
(13) The hypothetical question put to Dr. William Browning must be sustained upon the same grounds as those stated in discussing the hypothetical question put to Dr. Pilcher.
(14) The same witness, in the course of his direct examination, stated, in substance, that some changes had taken place in the lower portion of the spinal cord of the plaintiff, and that he could tell with reasonable certainty that they were one of two or three things,—either some inflammatory changes about the lower portion of the cord, or some in the cord itself,—and that a wrench of . the spine would be a competent cause to produce both of these troubles. The appellant argues that this evidence should not have been received, because an expert should not be permitted to answer at all when the question only was that a given injury is capable of producing one among two or three conditions, either of which conditions is equally indicated by the symptoms of the patient. But there is no rule of evidence which excludes such testimony. Probabilities are proper to be considered in reference >to an existing physical condition, and it would be manifestly unjust to keep from the consideration of a jury the expert evidence of a physician that the plaintiff exhibited symptoms which were equally characteristic of two different internal conditions, either of which conditions could be occasioned by the accident which had befallen the patient, simply because the witness was unable to sav with certainty which of the internal conditions actually exisu d.
*579 (15) I do not understand this witness had stated that any wrench of the spine would have been a competent cause to produce the troubles which he described, but at all events the question to which objection was made was proper in form, and the objection was rightly overruled.
(16) This exception raises the same question as that raised in reference to Dr. Pilcher’s answer to the hypothetical interrogatory, wherein the witness was asked to assume that there was no other known cause for the condition of the plaintiff, and it is likewise untenable.
(17) The testimony of Dr. Browning as to the change in the plaintiff’s appearance since the accident was unobjectionable. It came from a physician, but would have been admissible from a layman. Cannon v. Railroad Co., 9 Mise. Rep. 282; 61 S. R. 147.
(18) As the plaintiff’s disability was shown to have continued into 1894, it was proper to take evidence as to his income in that year. It is true, no doubt, that the falling off may have been dne to other causes than the accident; but such testimony is competent, and it is for the jury to say how far the diminution in the plaintiff’s receipts was due to his inability resulting from his injuries, and how far to other circumstances.
(19) The questions asked of the defendant in regard to the pavement of Ninth avenue beyond Fourth street were proper cross-examination to test his knowledge, and in view of his statement on direct examination as to the good condition of the pavement between Third and Fourth streets; and in any event the inquiry was harmless, as the answer showed that the defendant knew nothing about it.
So much for the defendant’s exceptions to the rulings of the trial court in respect to questions of evidence. In the brief in his behalf ten other exceptions are discussed, which were taken to the rulings of the court upon requests to charge. There were upward of thirty such requests presented by the defendant’s counsel, involving to a great extent the repetition of substantially the same legal propositions, in varying forms, with slight shades of difference in expression. In this respect the record well illustrates the difficulties which beset the work of a trial judge under our system of practice, which permits or tolerates the excessive multiplication of' requests to instruct the jury. I will review the exceptions on this branch of the case also in their numerical order.
(1) The court charged the jury, at the request of the defendant, that:
“The presumption of law is that, when vehicles meet on a public highway, the driver who attemps to pass to his left of the center of the road is negligent; and the plaintiff cannot recover here, and your verdict must be for the defendant, unless he satisfies you by a fair preponderance of proof that there were such obstructions in Ninth avenue, at and about the place of collision, that he could not use any portion of the highway to his right hand.”
To this the learned judge added, “and that there was an insufficient space for the truck to pass between him and the curb un his *580 left,” to which qualification the defendant excepted. I understand the effect of the qualifying words to be that the plaintiff was to be deemed negligent for not using all the space to his right, if there was not enough room for the truck to pass to his left. This was the view of the plaintiff’s obligation expressed in the body of the charge, and was there correctly stated in these words:
“.When he [plaintiff] saw a vehicle approaching, it was his duty to give it sufficient space to pass him on his left, the passing vehicle keeping to its right. That he was bound to do, and he was bound to turn out even on to what he claimed to have been the rougher portion of Ninth avenue, if that was requisite, in order to give the approaching vehicle ample space,—not crowding it down to a few inches, but to give it a full, reasonable space to pass by.”
(22) The court refused to charge that, even though the road west of the center was rough and impassable, still the plaintiff was in duty bound to go as far as he could to avoid a collision, and if he failed to do so he could not recover. By this refusal the trial judge did not hold that it was not the duty of the plaintiff to do all that a reasonably prudent man could to avoid the collision, but he merely declined to instruct the jury, as matter of law, that the plaintiff would be barred from a recovery unless he kept to the very furthest right of the passable road. Even if the refusal was error it was corrected by the subsequent instruction, at defendant’s request, that it was .the plaintiff’s duty to seasonably turn his horse and carriage to the right, if necessary, sufficiently far to avoid the collision, and that if he failed to do so he could not recover. The request to charge that under the evidence there were 18 inches of paved street to the west of the railroad track in Ninth avenue, which the plaintiff could have used, but did not use, was properly refused. The evidence on that subject was not undisputed.
‘ (3) After charging the jury that if there was a space of 18 inches, by the use of which the plaintiff could have avoided the collision, it was his duty to turn out to avoid the accident, the court charged, at the request of the plaintiff’s counsel, that “he was only obliged to make that turn provided the situation in his front was such as to advise a reasonably prudent person that it ought to be made.” There was no error in this. The necessity of turning from his course at all depended on what was the situation in front of him. He was bound to turn if prudence required it, not otherwise.
(4) The court, being asked to charge that the plaintiff could not recover if he failed to give defendant’s truck as much leeway as possible, did charge that he could not recover “ if he failed to give the defendant’s truck as much leeway as was reasonably necessary for its use in passing him.” The exception to this modification is not well taken. It involves the assumption that the plaintiff was bound to go to the extreme right of the usable road, whether prudence required it or not, which is a stricter measure of obligation than I think the law imposed on him.
(5) The defendant excepted to the instruction, given at the instance of the plaintiff, that if the right side of Ninth avenue “was substantially impassable, by reason of loose paving stones lying on the surface of the street, or by reason of any appearances that it *581 would be extremely difficult to travel there," then the plaintiff wa justified in confining himself to the beaten and traveled portion of the road. The only part of this instruction about which there can be any doubt is that which stated that an apparent difficulty of passage, if extreme, would relieve the driver from the rule of the road. I see no valid reason, however, why it should not. A person driving upon a public highway, perhaps for the first time, must of necessity trust to appearances, and be guided by them. If a portion of the road looks dangerous, a prudent driver will keep off it. He cannot take the time to stop and alight and examine to ascertain whether it actually is impassable, or difficult of passage, as it seems. Prudence demands that he shall avoid it unless it looks as though it could be safely traveled over, and if he does avoid it the fact that it really was passable, although it seemed not to be so, should not affect the character of his act.
(6) In response to a request to charge that, “ if the westerly side of Ninth avenue at the point of collision was in a -reasonably passable condition for the plaintiff to drive upon, it was the plaintiff’s duty, to give the defendant’s truck the entire portion of Ninth avenue easterly of the center, along which to pass, in order to avoid a collison," and that if he failed to do so he could not recover, the court said to the jury, “I charge you that he was bound to give, as I have already charged you, the truck ample space to pass by,— to turn out seasonably to avoid coming into collision with it. That is as far as I will go on that’’ The request might have been wholly refused without harm, because, as has been shown in discussing the effect of a violation of the law of the road, it is not conclusive evidence of contributory negligence. Still the trial court had held otherwise, and probably did not intend to vary from that view in this instance. The substance óf this request had been charged previously, and was charged subsequently ; and the failure to give the instruction in full at this point in the trial could not hav% prejudied the defendant, even if the proposition of law had been correct.
(7) The seventh exception is untenable, for the reason already set forth in regard to the second and fourth exceptions.
(8) The court left it to the jury to say whether the plaintiff was right or not if he assumed that the truck would adhere substantially to the line of passage it was coming on, and would not lunge over on him as it reached him, provided the jury believed that he had left ample space for the track to drive along past him without coming into collision; not calculating down to feet and inches, but giving it ample space. This instruction was favorable to the defendant, and afforded him no good ground for exception.
(9) The ninth exception involves substantially the same point as the second and fourth exceptions, which have already been discussed.
(10) The last exception is unavailing, because the subject-matter had been sufficiently covered by charging the request of the defendant numbered 18, wherein the court had fully defined the plaintiff’s duty. Moody v. Osgood, 54 N. Y. 488; Rexter v. Starin, 72 id. 601.
The only remaining point relates to the amount of the verdict *582 I do not think this can be deemed excessive, in view of the fact that there is evidence in the record from which the jury could infer that the earning power of the plaintiff in his professional capacity has been materially lessened as a result of the accident, and also that his injuries, in addition to having caused him much pain and suffering, had resulted in a diseased condition, which was progressive in its character, and probably not curable.
In my opinion the judgment and order appealed from should be affirmed, with costs.
All concur.