PER CURIAM. An examination of the record in this case does not disclose any exception or error of law for which the judgment should be reversed. As to questions of fact, and as to whether the verdict is excessive, we are precluded from examining them, for the reason that the record does not show that any order denying a motion for a new trial was ever entered, nor that the case contains all the evidence that was given upon the trial.

The judgment therefore must be affirmed, with costs.

PUTNAM, J., not acting.

---

## SCHLITZ v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

DRIVING ON STREET-CAR TRACK—TURNING TO LEFT—CONTRIBUTORY NEGLIGENCE.

A driver of a heavy drag, loaded with people, and to which six horses were attached, was driving on a street-car track at night, and, to permit a car to pass from behind, turned to the left across a parallel track, and was immediately struck by a car approaching on the second track in the opposite direction. The driver knew that cars were running a minute apart. The dirt road to the right was muddy, but it was not shown to be impassable. *Held*, that his turning to the left was negligence contributing to the injury.

Appeal from trial term, Kings county.

Action by John Schlitz against the Nassau Electric Railroad Company. There was a judgment for defendant, and plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Martin E. Halpin, for appellant.
Henry Yonge, for respondent.

HATCH, J. The evidence given upon the trial disclosed that on the 22d day of August, 1897, the plaintiff had contracted to carry the John Palmer Association from Throop avenue, in the city of Brooklyn, to Sheepshead Bay; and, in compliance with such contract, he transported the association in a vehicle known as a "drag," having seven seats running crosswise in the body. There were attached to the drag six horses, hitched in spans, and they were driven by William Grupp, a servant of the plaintiff. From the head of the leaders to the rear of the vehicle was a distance of between 50 and 60 feet, and the driver sat upon a box on the vehicle, raised about four feet above the horses. The return trip was begun from Sheepshead Bay at about half-past 6 o'clock, and while it was still light. The vehicle was supplied with lamps on either side of the box where the driver sat, and these lamps were lighted shortly after the return trip was begun. The lamps cast a reflection for a distance of about 100 feet. The day had been bright and clear until late in the afternoon, when a heavy shower came up and wet the roads, making them "muddy and slushy." The vehicle

proceeded along Ocean avenue, upon which street the defendant maintains and operates a double line of street-railroad track. The space occupied by the tracks, and to a distance of about 2 feet upon either side, is paved. The remainder of the traveled roadway of the avenue is a dirt, unpaved road. The driver proceeded with the horses and vehicle by driving on the right-hand track of the railroad, but, as the vehicle was wider than the tracks, the wheels upon one side ran in the dirt roadbed, and the others in the groove of the rail of the track. It was Sunday, and a large number of people were being transported by the railroad company from and to Sheepshead Bay,—cars running in both directions upon about a minute headway. The cars upon the track proceeded with more rapidity than did the vehicle, and the latter's position obstructed the tracks upon which the cars ran to the city of Brooklyn. While in this position a car approached from the rear, rang its bell for the vehicle to remove from the track, and thereupon the driver pulled his leaders to the left, over the track upon that side, and almost immediately thereafter a car upon that track came in collision with the horses and vehicle, killing some of them, injuring others, and damaging the drag, the driver, and, to some extent, its occupants. It was testified by the driver and by his brother, who sat upon the seat with him, that there were no lights either upon the head or in the body of the car at the time when the driver turned his horses to the left-hand side of the street, and some testimony was given by the passengers in the car that the lights were not lighted. Other witnesses testified that the lights in the car were lighted both at its head and in the body, and had been so lighted for some time; and an examination of the testimony of the lady who testified that the lights were not lit, and her companion, indicates pretty conclusively that they were not engaged in making observation as to the lights, and, when cross-examined in respect thereto, the man admitted that the lights were lighted, and the lady made contradictory statements in respect thereto.

If the case turned upon the proposition as to whether the lights within the car were lighted, it is possible that we might conclude that the jury would be authorized to find that there were no lights upon the car; and yet, in view of all the evidence in the case, such conclusion would be nearly, if not quite, against the preponderance of the whole of plaintiff's proof upon that subject. But our view of the case, and the features which control our decision, do not make such question the controlling one in the case. It must be assumed, although the testimony does not so state in words, that the space to the right of the car track was passable, and that the vehicle might have been safely driven therein. It appeared that a part of the vehicle was at all times run upon a part of this dirt roadbed, and no claim was made that it was impassable, except the statement that it was muddy and slushy. Such condition, however, while it may have made the drag easier to haul, and expedited headway, did not render the road impassable, or prevent the driver from going therein, where it might have entirely cleared the tracks and reached a safe place. In accordance with the law of the road,

it became his duty to drive to the right; and it also became his duty to remove the drag from the track, to permit the car in its rear to pass, as the car then had the paramount right of way in the track. While turning to the left did not conclusively establish contributory negligence upon the part of the plaintiff, yet it created the presumption that by his act he contributed to the accident, and such presumption becomes conclusive unless his presence upon the wrong side of the road be explained and justified. Quinn v. O'Keeffe, 9 App. Div. 68, 41 N. Y. Supp. 116. As we view the evidence, there was no sufficient justification given of his presence upon that side of the road. As we have already observed, he might have exercised his lawful right, and driven to the right of the track. He was also authorized to drive to the left, if the conditions existing at the time, of which he had notice, or of which he ought to have taken notice, rendered such course free of danger either to himself or others. The fact that the accident happened almost immediately upon his turning to the left established the close proximity of the car. The driver then knew (for he so testified) that these cars were running upon each track at intervals of about a minute; and it is quite evident that to control six horses, and haul an unwieldy drag across these tracks, would occupy the whole of that space of time. Consequently, whether he saw the approaching car or did not see it, he was chargeable with the knowledge that the transference of his horses and drag from one side of the street to the other would almost certainly bring him in contact with an approaching car, and, if a collision did not occur, the progress of the car would be impeded, and he would in any event infringe upon the paramount right of way which the moving car possessed. In view of these circumstances, it is clear that the plaintiff, when he chose to go to the left, in the wrong place, rather than to turn to the right and be in the right place, took upon himself the risks incident to that situation, and of which he knew, or with which he was chargeable. The collision was therefore the direct result of his wrongful act, and he was properly chargeable with negligence. It follows that the judgment should be affirmed.