## NEAD v. ROSCOE LUMBER CO.

(Supreme Court, Appellate Division, Second Department.   October 26, 1900.)

1 STREET— STOPPING — INJURY — NEGLIGENCE —CONTRIBUTORY NEGLIGENCE—
      JURY.
      Plaintiff's cart stood on a street about 3 feet from the curb, and near
   an intersecting street.   Plaintiff had been standing at the rear outer cor-
   ner of the cart for 3 or 4 minutes, tightening the cover, during which time
   he had not looked in either direction, when he was struck and injured by
   the rear wheel of defendant's truck, which had turned in from the inter-
   secting street, about 30 feet away, and was within view of the plaintiff
   less than 20 seconds previous to the accident.   The truck, which was 27
   feet long, first turned to the opposite side of the street, then turned
   sharply towards plaintiff, causing the rear wheel to strike and injure him.
   The horse drawing the truck was walking, and the cart was in plain
   view of the driver of the truck.   The street was 33 feet wide, and unob-
   structed.  *Held*, that the question of defendant's negligence and plain-
   tiff's contributory negligence were for the jury.

2. TRUCK—INJURY—NEGLIGENCE—REASONABLE CARE.
      Where the driver of defendant's truck, which was 27 feet long, made a
   sharp turn, causing the rear wheel to strike and injure plaintiff, it was
   not sufficient to relieve defendant from negligence that the front part of
   the truck missed plaintiff, since he was bound to use reasonable care
   that no part of the truck should injure him.

3. TRAVELER—STOPPING—REASONABLE TIME—STREET—OBSTRUCTION.
      Where plaintiff had stopped his cart at the side of the street for sev-
   eral minutes, and had alighted to water his horses and tighten the cart
   cover, he was a traveler therein, and as such had a right to so stop a rea-
   sonable time, and hence was entitled to recover for injuries sustained from
   being struck by a passing truck.

Appeal from trial term, Kings county.

Action by Joseph Nead against the Roscoe Lumber Company.
From a judgment for plaintiff and an order denying defendant's mo-
tion for a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD,
HIRSCHBERG, and JENKS, JJ.

Albert E. Lamb, for appellant.
Isaac M. Kapper, for respondent.

JENKS, J.   This is an action for damages caused by negligence.
About 8 o'clock a. m. of April 25, 1899, the plaintiff, while driving
an ash cart along Norman avenue, Brooklyn, stopped at a watering
trough located on the sidewalk on his left-hand side, about 34 feet
beyond the intersection of Manhattan avenue.   The back of the
cart was towards Manhattan avenue, with the rear wheel about 26
feet therefrom.   The cart was 7 feet wide, with a box 8 feet long, and
the distance from the front of the body of the cart to the end of the
pole was 3½ feet.   The left-hand rear wheel was then 3 feet from
the curbstone, and the corresponding front wheel closer to it.   The
plaintiff gave drink to one horse, alighted to look to his defective axle
on the side nearer to the sidewalk, and then went to tighten the
canvas cover over his cart, first to the side nearer to the sidewalk,
and then to the opposite side.   While he was engaged at the rear
outer corner of the side of the cart further from the sidewalk, with

his body and face towards his cart, he was struck by the rear wheel of the defendant's truck, which had been driven in from Manhattan avenue. The defendant's vehicle was a "reach truck," "shafts and all 27 feet long," drawn by a single horse, and loaded with 24-foot lengths of yellow pine. Manhattan avenue lies north and south, Norman avenue runs east and west, and both the plaintiff's and the defendant's proposed lines of travel on Norman avenue were easterly. The negligence charged is that the defendant's driver, who was traveling to the south in Manhattan avenue, turned his truck towards Norman avenue,—first turned to his right, and was going over to the right side of that avenue, and then he "turned his horse sharp to the left," and "when he came short to the left he went on straight," when the rear wheel of the truck, in consequence of the sharp turn, came in contact with the ash cart, and injured the plaintiff. In the words of one of the plaintiff's witnesses, the defendant's driver "made the turn right around to straighten out his wagon; kept going around to the left." The defendant's driver testified that from Manhattan avenue he "swung" to the northeast corner of Norman avenue, and then pulled "in to his right-hand side." On cross-examination, he testified:

"I turned my horse to the left to get into Norman avenue. Under the front of my wagon I had a fifth wheel. As I turned my horse, the hind wheels remained pretty nearly there. The hind wheels haven't got to come with it. It is a reach truck. I have a fifth wheel. That would turn the front around. That would turn the front. As I turned my horse to the left, that pulled the rear wheel of my wagon almost to the side of the street where this ash cart was."

His horse was giving a steady pull, but walking. The cart of the plaintiff standing there was in full view. Norman avenue was 33 feet 10 inches wide, and the defendant's driver testified that there was nothing to prevent him from going to the right or to the left of the street; that all was free and clear. At the time of the accident both plaintiff and defendant were travelers on the public highway, with the mutual and equal obligation of ordinary care, and so the plaintiff at the time had the right to expect ordinary care from the defendant. Harpell v. Curtis, 1 E. D. Smith, 78; Baker v. Fehr, 97 Pa. St. 70. In the case first cited, Woodruff, J., says:

"In the use of the public highway, a party has a right to expect from others ordinary prudence, at least, and to rely upon that in determining his own manner of using the road, not to justify his own foolhardiness, but to warrant him to pursue his own business in a convenient manner, where he has no reason to suppose the convenience or safety of others will be prejudiced thereby."

I think that the principle of Murphy v. Cooperage Co., 1 App. Div. 283, 37 N. Y. Supp. 151, Smith v. Bailey, 14 App. Div. 283, 43 N. Y. Supp. 856, and Quick v. Holt, 99 Mass. 164, applies here, and that the case presented questions for the jury, both as to the negligence of the defendant and the contributory negligence of the plaintiff.

The learned counsel for the appellant contends that, when the defendant's driver cleared the plaintiff and the ash cart with the front part of his truck, he did his full duty; that thereafter the sole obligation was to look ahead, and not behind, and so he was not bound to look to see his rear wheel. But the plaintiff's testimony

is that the driver had turned this 27-foot truck sharp to the left, and kept that direction. He was bound to use reasonable care that no part of his truck should work harm. The sharp conflict between the plaintiff and the defendant is raised by the statement of the defendant's driver that he cleared the plaintiff and the ash cart, and, then turning, he saw the plaintiff walk into the rear wheel, in spite of his repeated warnings.

The learned counsel for the appellant insists that the evidence established contributory negligence, in that the plaintiff testified that he stood at his cart four minutes without looking in any direction. The record shows:

"Q. When you were standing at the back of the wagon, how long had you been standing there before you were hit? A. Three or four minutes. Q. Did you look around you, either to the right or to the left, or were you looking at your wagon all the time? A. I always looked upon my wagon. Q. You didn't look around at all? A. I didn't turn around."

The plaintiff was not standing at gaze upon his cart for this period, but was engaged in the business of seeing to his axle and tightening his canvas cover, and his estimate of "three or four minutes" evidently is not an exact measurement of time, but expresses his idea of the time required to view the axle and to tighten the cover. The appellant argues that, if the truck was traveling at the rate of two miles an hour, it went 704 feet in the "four minutes" while the plaintiff did not observe it. He does not take into consideration that the truck had turned in from Manhattan avenue only 26 to 34 feet away, and therefore was only within the possible vision of the plaintiff for less than 20 seconds previous to the accident. Moreover, the plaintiff was not injured in that he stood in the direct course of the truck, for he was struck by the rear wheel. Had he seen the truck approaching, and then stood in his place correctly judging that the front of the truck would clear him, as it did for 15 feet of its length, could it be said, as matter of law, that he was guilty of contributory negligence in not moving in anticipation of the contact of the rear wheel? Was he bound, as matter of law, to know that, though the front of the truck cleared him, yet there was danger in the rear wheel? This case is not quite that of a foot passenger crossing the street, and so possibly moving towards danger. The plaintiff was standing in the street, lawfully about his business, and was not bound to foresee that the defendant would make the sharp turn in his course that was testified to by the plaintiff's witnesses. Quinn v. O'Keefe, 9 App. Div. 68, 70, 41 N. Y. Supp. 116. The appellant contends that this case is to be distinguished from Smith v. Bailey, supra, and like cases, where a public employé is injured while lawfully engaged in his work in the street. But this plaintiff, as I have said, was lawfully in the street, and must be regarded as a traveler therein at the time of the accident. Elliott, Roads & S. § 847; Smethurst v. Barton Square Church, 148 Mass. 261, 19 N. E. 387, 2 L. R. A. 695; Duffy v. City of Dubuque, 63 Iowa, 173, 175, 18 N. W. 900. Elliott, supra, lays down the rule: "Travelers, whether on foot or in carriages, have a right to stop a reasonable time by the roadside for their own convenience, provided

they do not unduly interfere with the rights of others." In Smethurst's Case, supra, the plaintiff was unloading his wagon in the public street when his horse was started by a fall of snow or slush from a roof. The court held that, in order to be a traveler, it was not necessary that one should be constantly moving, or that the vehicle which he drives should be constantly in motion; that it would be impossible to use the highways conveniently with teams if occasional stops were not permitted for various purposes; and that during such stops, "if reasonable in duration," one should not lose his rights as a traveler, and the protection thus afforded to his person and to his property. In Duffy's Case, supra, the plaintiff, a workman, was in company with a teamster, who was carrying a load of material to the building to be used in doing the work, and they stopped at a drinking hydrant. A part of the roof of an adjoining building was blown over upon the workmen. The court held that he was a traveler, and that his stop was a mere incident to his use of the street as such. Kettle v. Turl (Com. Pl.) 34 N. Y. Supp. 75, cited by the appellant as authoritative, presents this difference: The plaintiff had seen the truck of the defendant, and knew that it was coming right down to him, and yet he never looked to see whether it was safe for him to mount upon his own cart. In the case at bar it did not appear that the plaintiff saw the truck, which had turned in at the corner only 26 feet distant, or had any notice of its coming. There are no exceptions upon questions of evidence that are urged upon us as well taken, and no question is raised as to the amount of the damages.

The judgment and order should be affirmed, with costs. All concur.