## DICKINSON v. PLATT.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—COLLISION WITH VEHICLES—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action to recover for causing death of plaintiff's intestate by collision with defendant's wagon, evidence considered, and *held* to establish contributory negligence.

2. SAME—LAW OF THE ROAD—COLLISION WHILE DRIVING ONTO ROAD.

A collision occurred in a street between a wagon and a man on a bicycle, just as the wagon was driven onto the street from an alley, and before the driver had an opportunity of turning it so that it would be straight with the street. *Held*, in an action to recover for the death of the bicycle rider, that there was no occasion to apply the law of the road.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1515; vol. 25, Highways, §§ 461–463.]

3. SAME—INSTRUCTIONS.

Plaintiff sued to recover for the death of her intestate caused while riding a bicycle by colliding with defendant's wagon while the latter was being driven onto a street from an alley, and before the driver had an opportunity to straighten it out on the street. *Held* that, as there was no occasion to apply the law of the road, and as defendants did not object to instructions as to such law, they were entitled to an instruction that defendants were not negligent because the driver was across the center of the street, if the jury so found, in case he conducted himself with reasonable care; and an instruction that a presumption of negligence arises from being on the wrong side of the road, which defendants must rebut, is not sufficient.

Appeal from Trial Term, Onondaga County.

Action by Georgia B. Dickinson, as administratrix of the goods, chattels, and credits of Frank L. Dickinson, deceased, against Thomas C. Platt, as president of the United States Express Company, an association consisting of seven or more members. Judgment for plaintiff, and defendant appeals. Reversed.

A. H. Cowie, for appellant.

Charles G. Baldwin, for respondent.

NASH, J. This action is brought to recover damages for the death of the plaintiff's intestate, resulting from a collision of the decedent, while riding upon a bicycle, with an express wagon of the defendant. The accident occurred about 12 o'clock noon of the 26th of October, 1905, on Clinton street, in the city of Syracuse. Clinton street extends north and south. Near the place of the accident Walton street runs into Clinton street from the west, but does not cross Clinton; Clinton street and Walton street are each 38 feet wide from curb to curb. The express wagon which collided with the decedent came out from a narrow alley which runs into Clinton street from the east. The width of the alley is 13½ feet, the center of the alley is 19¼ feet south of the south curb line of Walton street extended across Clinton. The witnesses describe the bicycle rider as proceeding southerly on the right-hand side of Clinton street, three or four feet distant from the west curb, until he got opposite Walton street, where there were a couple of depressions in the asphalt pavement, and either to avoid these depressions, or to avoid a team of horses coming out of Walton street at the time from the west, or for some other reason, he swerved around east of the depressions, going toward the middle of Clinton street, and immediately after, and at a point near the middle of the street, he collided with the left thill of the express wagon. The express wagon had just come out of the alley which runs into Clinton street from the east. The driver in coming out of the alley turned to his right to go north on Clinton street. North of the alley, and to

the right as he emerged, there is a plumbing establishment, spoken of
in the evidence as McClure's.   The defendant's driver and some of the
other witnesses state that a wagon was standing near the curb in front
of that store, just north of the alleyway, and the driver says in order
to make the turn to the north, he had to go around that wagon, which
took him out into Clinton street further than he would otherwise have
gone.

The plaintiff's witnesses, who saw the accident, and observed the
manner in which the collision occurred, gave testimony as follows:

Harry W. Hart: "I am employed by Neal & Hyde. Their place of business
is on the northwest corner of Walton and Clinton streets.  I remember the
accident to Mr. Dickinson.  It occurred very shortly after twelve.  I recollect
coming from the store, and crossed the street obliquely towards McClure's.  I
had got just about in the middle of the street.  I was aware of a wheelman
coming behind me, and looking around just enough not to get run into my-
self, I happened to turn my head.  I was aware of this wagon coming out
of the alley and the wheelman coming behind me.  I turned and looked just
at the moment of collision—just before.  I probably was aware that there
might be a collision.  The man on the wheel was about three or four feet
from the west curb of Clinton when he went behind me.  I was somewhere
between 10 and 15 feet out from the west curb when he went behind me.  He
was riding at about a moderate speed.  I should say that he was riding about
five or six miles an hour.  Q. Just describe what you saw?  A. Just as the
driver saw that the man was going into him, he started reining up his horse.
Mr. Dickinson struck the horse's head or the thill, as I understand since.  He
seemed to pitch up into the air and out to the west, and turned completely
around.  Q. Where was the horse and wagon when you first saw them?  A.
When I first had my attention on them directly was just before the collision.
Q. How was the driver going?  A. Why, he was reining up his horse with
considerable strength, I should say.  The driver was pulling up his horse.
He was just moving along pretty good speed then.  My recollection is that
he was trotting along.  Nearly in the middle of the street the horse was.  At
the very moment of collision the back end of the wagon was just on the turn,
coming out of the alley.  At the time of the collision the wagon was curved
around.  I saw where Dickinson fell.  His head was, as he lay, towards the
south, very nearly on a line with the south curb of Walton street.  He was on
the pavement not more than eight feet from the west curb of Clinton street.
*   *   *   In my opinion the wheelman, when I first saw the horse, was not
more than four feet at most from the horse, either directly in front of the
horse, or a little to one side.  He was in front of the horse's head; I know
that.  When I say either directly or a trifle to one side, I have in mind the
side toward Walton street, I think; that is toward the side I was going from.
The wheelman was going directly south through the street at that time.  He
was, I believe, not turned one side or the other—was going directly south.
I think the horse was nearly in the middle of the street at this time, and as
nearly as I can remember the bicycle rider was directly in front of the horse's
head.  I did not notice whether or not any horses were approaching the cor-
ner of Walton street at this time, but for some reason or other the bicycle
rider had gone from a point three or four feet from the west curb of Clinton
street out to the middle of the street, and I don't know whether or not that
was to avoid a horse coming out of Walton street.  *   *   *   I recognize the
point indicated on this map marked with a small circle, stated by the en-
gineer to be where the gas pipe comes up through the pavement, as about
the place where Dickinson's head struck after this collision;  very close to
that.  So after he came in contact with the horse or thill he slewed off, diagon-
ally, off to a southwesterly direction considerably, towards Webber's corner,
as they call it.  He went anywhere from five to eight feet, I should think, in
that direction, before his head went to the pavement.  *   *   *   From that
point where he went behind me, right there where I have described, about
opposite the north line of the face of the building on Walton street to the place

of collision, he went from about four feet from the curb out to the middle of the street, apparently. The rear of the wagon was backed up to the alleyway. Wagon still on a curve as it came out of the alley, partly; considerably. I think possibly the rear end of the horse was still on a curve too."

Mary E. Slocum: "I am employed at the R. C. McClure Co. Our place of business is at 329 South Clinton, just opposite Walton street. It is at the corner of this alley and Clinton street, north of the alley. There was a fire just about two minutes of twelve, I think, which called my attention to the window. We were all looking out; several of us. I saw the accident—the collision between this wagon and the bicycle rider—but I didn't see where he struck the wagon—what part of his head. It was on the opposite side of me the collision occurred; on the farther side from where I was standing. The accident happened as the driver was on the curve, turning up Clinton street. The horse was going just about seven miles an hour. I saw Mr. Dickinson on his wheel that day. When I first saw him he was about in front of Neal & Hyde's, a little this side, on the further side of the street. He was ten to eleven feet from the west curb of Clinton street, I should say; I don't know positively; he was going south. He was holding back the pedal when I saw him as he went down Clinton street. He was going in this direction at the time of the collision. He was riding that wheel five or six miles an hour I should presume. * * * He just went straight ahead, struck the horse and wagon. I could not see that part of it, because the horse was in my way; I was on the other side."

Frank Rewak: "I saw the man on the wheel. I saw the wagon come in contact with the man. It struck him on the corner of Walton street and Clinton street, by Webber's corner, across the street. The man on the bicycle, when I saw him, was about ten or fifteen feet from the horse. He was riding right along."

All the witnesses who locate the place where the decedent lay on the pavement after he fell give the distance as about six feet from the west curb of Clinton street, and in line with the south curb line of Walton street. The south curb line of Walton street extended across Clinton is 19¼ feet north of the center of the alley, and about 12 feet from the north corner of the alley. The length of the horse and wagon, from the rear of the wagon to the head of the horse, was shown to be 18 feet 2 inches. The witnesses place the body of Dickinson as he laid upon the pavement after the accident about two feet from the rear wheel of the wagon, so that there was a space of some eight feet between the horse and wagon and the west curb of Clinton street, within which Dickinson could have passed at the time the collision occurred. There was no evidence given upon the trial that Dickinson made any effort to avoid the collision. All of the witnesses for the plaintiff—and they were the only witnesses beside the driver who observed the bicycle rider just as he approached the point of collision—say the bicycle rider was going directly south through the street; went right straight ahead. Miss Slocum says: "The man on the bicycle wasn't doing anything to keep out of the way that I could see; he just kept right straight along." The evidence now in the record points equally as much to negligence on the part of Dickinson as to that of the driver of the wagon.

The witnesses agree, and the situation shows, that the horse and wagon had not straightened out on Clinton street before the collision, so that the case did not furnish any occasion for the application of the law of the road, as it is termed, by which teams meeting shall reasonably turn to the right. The court, in charging the jury, stated as the law of the road that "a driver must keep on the right-hand side of

the road. As he meets teams coming from the other way, he must turn to the right; that is the law of the road." And further charged the jury as follows:

"If you find that it was unreasonable and imprudent and negligent for him [the driver] to get onto the west side of the center—get the express wagon onto the west side of the center—and this accident resulted because of the presence of the express wagon on the wrong side of the road, then the negligence of the defendant is made out."

Again:

"Now if this driver was negligent, if there was no reason for his being over on the west side of the road, if you find he was over there on the west side, and there was no fair reason for his being there, if you find his presence there and progress towards the north was an act of negligence, and this collision resulted because he was negligent, if you find that this man on the wheel was free from negligence which contributed to the accident, then you have cause of action made out, then your verdict must be for the plaintiff."

In view of the charge as made, with which no fault was found by the defendant, the defendant's counsel made the following requests:

"I ask your honor to charge that the defendant was not negligent because the driver was across the center of the street, if they found he was across the center of the street, in case he conducted himself with reasonable care while there."

The court in reply said in part:

"The presumption is that the man who is on the left-hand side of the street is negligent for being there, because he is not in his right place when he meets somebody coming the other way. In the absence of any explanation whatever, his being on the wrong side of the road, that raises the presumption that he is there negligently. Now in this case, if you find that he was on the left-hand side of the street going north, it is for the defendant to explain what necessity took him over on the left-hand side of the street."

The court declined to charge in the language of the request, and the defendant excepted.

We think this was reversible error. The defendant was entitled to have the charge made in the language of the request. If the horse was driven over to the west of the center of the street, it was still a question whether while there the driver used reasonable care to avoid the collision. Newman v. Ernst, 31 N. Y. St. Rep. 1, 10 N. Y. Supp. 310; Quinn v. O'Keeffe, 9 App. Div. 68, 41 N. Y. Supp. 116; Opinion by Goodrich, P. J., in Savage v. Gerstner, 36 App. Div. 220, 55 N. Y. Supp. 306.

The judgment should be reversed upon the ground that, upon the evidence now in the record, the plaintiff's intestate was not shown to have been free from contributory negligence, and also for error in the charge of the court.

Judgment and order reversed, and new trial ordered on questions of law only, with costs to the appellant to abide the event.

McLENNAN, P. J., concurs. SPRING, WILLIAMS, and KRUSE, JJ., concur on second ground stated in opinion.