L. F. WENDEL

versus

JAMES F. MIAZZA

NO. 8532

COURT OF APPEAL

PARISH OF ORLEANS

WILLIAM M. BELL, JUDGE:

December 11, 1922.

Court of Appeal
PARISH OF ORLEANS

FILED  Dec 11/22

BY: WILLIAM A. BELL, JUDGE:

Plaintiff sues defendant for damages suffered
to plaintiff's automobile, growing out of the collision between
his and defendant's automobile on Sunday, August 28, 1921, about
three o'clock in the afternoon of said day. The accident is shown
to have occurred on South Carrollton Avenue between Panola and
Sycamore Sts., about 100 feet, or a third of a block, from the
corner of South Carrollton Ave. and Panola St., and on the lower,
or east side of Carrollton Ave. Both automobiles seem to have
been damaged, the plaintiff suing for damages in the sum of $300.00
and the defendant suing in reconvention for damages in the sum of
$58.00. There was judgment in the trial court for plaintiff, in
the sum of $269.00, dismissing the reconventional demand, and
from said judgment defendant appeals.

South Carrollton Ave. is a neutral ground street,
upon which traffic on the east side thereof, goes in the direction
of south to north, while that on the west side is in the direction
of north to south. The evidence shows that on the day of the ac-
cident, the traffic on the upper, or west, side of Carrollton Ave.,
that is, the north-south direction of traffic, was closed for re-
pairs several blocks north of the point of accident, a fact which
temporarily made the east side of South Carrollton Ave., for sev-
eral blocks, and at least up to the corner of Panola and South
Carrollton Ave., a two-way traffic street. For the above reason,
just stated, we find that the plaintiff, while travelling in a
north to south direction on the upper, or western side of South
Carrollton Ave., was compelled to cross over to the east, or lower
side of South Carrollton Ave., while going in the direction of,
or towards, St. Charles Ave., and that he had followed a motorcycle
policeman, going ahead of him, and that he, plaintiff, had properly
taken the upper side of the then two-way traffic street, nearest
the neutral ground thereof.

We find that the speed of plaintiff's automobile was not an excessive one at any time, and that while travelling nearest the neutral ground at a point about two thirds of the block beyond the corner of Sycamore and South Carrollton Ave., he was suddenly confronted with the on-coming car of the defendant; that he promptly blew his horn and came to a full stop in order to avoid the accident, and that he and another occupant of his car shouted to the driver of the defendant's car, who failed to heed the warning given him.

A disinterested witness, testifying on behalf of plaintiff, states that he was standing at the corner of Panola and Carrollton Ave. when he heard the continuous blowing of a horn, and looked in the direction of the sound, and saw that plaintiff's car had stopped and that its occupants were shouting to another car coming down upon plaintiff's car at the rate of about 25 or 30 miles per hour.

A police officer, sent to the scene of the accident, testifies that when he asked the driver of the defendant's car how the accident happened, the said driver told him that when he noticed plaintiff's car, he became confused and did not have time to swerve his car to the right, and that when he looked and saw plaintiff's car in front of him, he hit the car before he could stop. It is shown by this policeman that the invariable rule or order, received from police headquarters, was to compel those travelling on a neutral ground street to take the opposite side to that on which they were travelling when their side was blocked or obstructed for repairs, and that this order was only countermanded at police headquarters long after the accident in this case occurred, and just about a week before trial, the rule now being to direct the driver, under similar circumstances, to turn into the next cross street, that is to go around the next block.

The occupant of defendant's car was his son, a young man attending High School. He was driving the car while accompanied by a young lady acquaintance. The young man testifies that he was looking on the other side of the street (meaning in the direction of the upper, or western side of South Carrollton

Avenue) and that he did not see plaintiff's car until he got right upon it, thus admitting that he was not looking in the direction in which he was driving, and when pressed as to this, replied in explanation: "You cannot look ahead all the time."

Plaintiff testifies that defendant's son was talking to a lady friend in the car, and was driving with one hand on the wheel and the other on the back of the seat, both the young man and the young lady being seated together in the front of the car, and that he noticed the young lady pointed down to Panola St. where there was some attraction, the young man thereby not paying any attention to where he was going, although plaintiff kept on blowing his horn, and although both plaintiff and the other occupant of his car shouted a warning to him.

We finally note from the evidence that the officer verifies the fact that the upper side of Carrollton Avenue was closed for repairs, and that he did not arrest plaintiff for this reason, he being on the side of the temporary two-way traffic street nearest the neutral ground, where we find he had a right to be.

There is no controversy as to the extent of the damages on either of the automobiles in this collision, and appellee has not moved here for an amendment of the judgment as allowed.

The defendant, in his answer, pleads negligence and liability on the part of the plaintiff, because of the latter's violation of the city ordinance, but no such ordinance was offered at the trial of this cause, and therefore, the court can take no cognizance thereof. Kerner v. Hartman. 8396 Orl. App.; State v. Judge, 105 La., 758; State v. New Orleans. 132 La.,195; Rudison v. Glover, 135 La., 381, and numerous other authorities to this effect.

Our conclusions are that the plaintiff in this case was in no manner negligent; that he observed the rule of the road in keeping to the right of the particular side of the neutral ground upon which he was forced to go under conditions above noted.

In Berry on "Automobiles", third edition, par. 238, the rule is discussed in which it is shown that a traveller may be justified in driving on what might otherwise be the wrong side of the road. This text writer comments on this subject as follows:

"A motorist may justify driving on the wrong side of the highway; but the conditions by which he attempts to justify such a course must result from causes beyond his control.

Allegations of the complaint that defendants were travelling along their left hand side of the highway do not make a case of negligence _per se_, because there are certain circumstances under which the law permits one to use that portion of the highway. Hagenah v. Bidwell, 189 Pac. 799.

One may justify his driving on the wrong side of the road by showing that the road on the other side was practically impassable or appeared to be unsafe." Quinn v. O'Keefe, 9 App. Div. 68 (41 N.Y. Suppl. 116.)

The defendant was wholly liable in this case, and we find that the judgment of the lower court is without error, and should be affirmed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from awarding plaintiff damages and rejecting defendant's claim in reconvention, be, and the same hereby is, affirmed, at defendant's cost in both courts.

JUDGMENT AFFIRMED.

December 11, 1922.