JAMES O'NEIL *vs.* THE TOWN OF EAST WINDSOR.

Hartford Dist., May T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

The questions of the duty of a town to keep its highways in repair, and of a traveler to use reasonable care, are questions of law, but the question in any particular case whether the duty has been performed is wholly one of fact.

The statute (Gen. Statutes, § 2689,) which provides that drivers of vehicles shall turn to the right when they meet on the highway, does not absolutely bar one who turns to the left from the right to recover for an injury from a defect of the highway on that side. It would, however, be a circumstance, and a very strong one, for the court to consider in deciding whether the party acted with reasonable care.

The plaintiff's horse was injured, through a defect in a highway, beyond all reasonable hope of recovery. Held that his right to recover its full value was not affected by the fact that he had caused him to be killed.

[Argued May 3d—decided May 22d, 1893.]

ACTION to recover for an injury to the plaintiff's horse, through a defect in a highway of the defendant town; brought to the Court of Common Pleas of Hartford County, and tried to the court upon a general denial. Facts found and case reserved for advice. The case is fully stated in the opinion.

*T. E. Steele* and *F. A. Scott*, for the plaintiff.

*G. G. Sill* and *G. E. Sill*, for the defendant.

ANDREWS, C. J. In this action the plaintiff claimed to recover the value of a horse which he alleged had been injured by reason of a defective highway which it was the duty of the defendant town to keep in repair. The case was heard in the Court of Common Pleas in Hartford County and reserved for the advice of this court upon a finding of the following facts:—

About seven-thirty o'clock of the evening of January 5th, 1892, the plaintiff's son, engaged in the plaintiff's business, was driving a pair of the plaintiff's horses attached to an empty farm wagon on a highway belonging to the defendant town. The team was walking in an easterly direction up a long hill east of a bridge over the Scantic river, and was in the traveled path. When about four hundred feet east of the bridge the son turned the team out of the traveled path to the left and to the side of the highway to avoid a collision with a horse and wagon driven very fast down the hill. The plaintiff's team thereby came against a log lying on the highway at that point. The off horse was thrown down by the log, and received injuries on its head. This log was the stem of a dead poplar which once stood on the north bank of the highway, but had fallen over the gutter and upon a part of the highway available for travel, and lay sloping and at an angle of about forty-five degrees with the line of the highway, and pointing down the hill. The top of the tree was gone; the stem was about twenty-two feet long, one foot through at the butt, (which rested on the bank,) and six and

a half inches through at the small end, which was from two to three feet off the north rut of the wagon track. The stem was free from branches, but a part of one near the top projected from the west side about six inches. The log lying as described rendered that part of the highway on which it lay defective, and, especially in the night, unsafe. The center line of the traveled path was about two feet north of the center line of the highway, which was twenty-one feet wide at this place. There was sufficient space south of the traveled path for such a team as the plaintiff's to safely pass another vehicle coming along the traveled path from the opposite direction. The plaintiff's son was thirty years of age and accustomed to driving horses. He first saw the horse and wagon coming when about eight feet away, and, in turning to the left instead of to the right, only sought to escape a threatened collision. The night was moonless and slightly hazy. The wounds received by the plaintiff's horse as aforesaid resulted in lockjaw, and on February 13th, 1892, the horse was killed, by the plaintiff's direction and by the advice of a competent veterinarian, as a relief from its sufferings. Its recovery was then beyond reasonable expectation. The log and stem had lain as described on the highway at least six weeks before the accident. By an arrangement between the three selectmen of the defendant town each of them had the inspection of a certain highway district, so that each highway should be inspected every month. There was no inspection of the part of the highway where the accident occurred from some time in November, 1891, until after January 5th, 1892. The defendant had no actual notice of this defect in the highway until after January 5th, 1892. The highway was the main thoroughfare between the city of Rockville and Warehouse Point, was used frequently, and about twenty vehicles passed over it daily. There are between ninety and a hundred miles of public roads in the defendant town. The value of the horse was $250 just before the injury. No question was made as to the defendant's duty to keep the highway in sufficient repair. The plaintiff

gave the notice to the defendant required by § 2673 of General Statutes of 1888.

By request of both parties in the above cause it was reserved for the advice of the Supreme Court of Errors on the following questions of law raised by the defendant on the trial : 1.—That the plaintiff, having killed the horse as aforesaid, cannot make the defendant responsible for its entire value. 2. That by turning of the plaintiff's team to the left as before described instead of the right, the plaintiff's son and agent was guilty of such negligence as to prevent a recovery by the plaintiff in this action. 3. That under the foregoing facts the Court of Common Pleas cannot find as a fact that the defendant town had constructive notice of said defect in the highway, or that it did not exercise a proper and reasonable supervision of the highway.

The defendant is liable in this action, if at all, only on the ground that it was chargeable with negligence in permitting its highway to be out of repair. And the plaintiff is entitled to recover, if at all, only on showing that he is not chargeable with negligence contributing to the injury of which he complains. Negligence is either the non-performance or the inadequate performance of a legal duty. Holland's Jurisprudence, 93 ; *Schoonmaker* v. *Alberton & Douglas Machine Co.*, 51 Conn., 392 ; *Nolan* v. *N. York, N. Haven & Hartford R. R. Co.*, 53 Conn., 461. This definition includes in it two subordinate ideas. The idea of duty, and the idea of the performance of duty. In any concrete case, whether or not one party owes a duty to the other, and, if so, what that duty is, is a question of law. Whether or not the duty, if there be one, has been performed is a question of fact.

The idea of the performance of duty suggests a further subdivision. What is the standard by which the performance of a duty is to be measured ? When may it be said that a duty has been performed adequately or inadequately ? And may it be a question of law, or is it a question of fact ? Doubtless there may be instances in which the law, either in terms or by the general agreement of the judgments of men, fixes definitely the standard up to which performance

must fully come in order to escape the charge of negligence. In such instances the standard of duty being determinate, and so the same under all circumstances, may be applied as matter of law by the court to the facts found in the case. *Empire Transportation Co.* v. *Wamsutta Oil Co.*, 63 Penn. St., 17. These instances are not numerous, and this case is not one of them. In most cases the measure of duty itself varies according to the circumstances which the case presents. The standard then is that of a reasonable man; what would a reasonable man of ordinary prudence have done under the circumstances as they existed in the case? In these instances both the measure of duty and the extent of performance must be ascertained as facts. *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239; *McCully* v. *Clarke*, 40 Penn. St., 399; *Pennsylvania R. R. Co.* v. *Barnett*, 59 id., 264; *Mad River & Lake Erie R. R. Co.* v. *Barber*, 5 Ohio St., 541; *Norris* v. *Litchfield*, 35 N. Hamp., 277; *Danner* v. *So. Carolina R. R. Co.*, 4 Richardson Law, 329; *Baltimore & Susquehanna R. R. Co.* v. *Woodruff*, 4 Maryland, 242.

The several questions in the finding upon which the advice of the court is asked all fall within the last mentioned class. They are therefore not questions of law, but questions which must be answered by a finding of fact. This court it will be remembered can only determine questions of law. That function which decides in any case what ultimate facts are proved by the evidential facts is one which belongs exclusively to the trial court. This court does not possess it. That it was the duty of the defendant to keep the highway on which the plaintiff was traveling in reasonable repair is admitted. Whether or not a log of the size of the one mentioned, lying as it did by the side of, and extending near to or into the wrought part of the highway, rendered the highway defective and unsafe, is a question of fact which the trial court can alone decide. *Williams* v. *Town of Clinton*, 28 Conn., 266; *Congdon* v. *City of Norwich*, 37 id., 414; *Dooley* v. *City of Meriden*, 44 id., 117; *Lee* v. *Town of Barkhamsted*, 46 id., 213. So too the duty of the defendant to exercise reasonable supervision over its highways was admitted.

Whether or not it had done so is also a question of fact. *Bill* v. *City of Norwich*, 39 Conn., 222; *Manchester* v. *City of Hartford*, 30 id., 118. On the other hand, the rule of duty imposed by law on the plantiff was admitted—that he must have acted with reasonable care himself. Whether he did so or not is quite as clearly a question of fact. We do not understand that the statute, § 2689, which provides that drivers of carriages shall turn to the right hand absolutely bars one who turns to the left hand from all right to recover. Such turning to the left would be a circumstance, and doubtless a very strong one, which the court would consider in deciding whether the party acted with reasonable care.

If the plaintiff is entitled to recover damages for the injury done to his horse he is entitled to recover the whole damage. We interpret the finding as intending to say that the horse was injured beyond all reasonable hope of recovery and so of no value at the time it was killed.

The Court of Common Pleas is advised that upon the facts found there is nothing in the law to prevent the court from rendering judgment in favor of the plaintiff for the full amount of the value of the horse.

In this opinion the other judges concurred.