DOLLY DEAN *vs.* BESSIE HERSHOWITZ.

MALTBIE, C. J., HAINES, BANKS, AVERY and DICKENSON, Js.

Argued November 7th, 1934—decided January 21st, 1935.

*J. Warren Upson,* for the appellant (defendant).

*Edward L. Reynolds,* with whom was *George J. Grady,* for the appellee (plaintiff).

MALTBIE, C. J. The substitute complaint in this case contains the following allegations: The plaintiff and defendant agreed to enter into a written lease of certain premises owned by the latter at a certain annual rental, provided the defendant made certain repairs inside and outside of the building which were necessary to make the premises tenantable and which were to be completed before occupancy began. Among the repairs to be made was the replacing of the floor of the front porch. In reliance upon the defendant's agreement to repair, the parties on May 15th, 1931, executed a written lease of the premises. On or about June 1st, 1931, and thereafter the plaintiff complained to the defendant's agent of their failure to repair the porch and on these occasions the defendant or her

agent acknowledged the agreement and promised to carry out her undertaking, blaming her employees for the failure to do so. On August 20th, 1931, the repairs still not having been made, one of the boards in the floor of the porch broke, the plaintiff's leg and foot went through the opening and, as a "proximate result of the negligence of the defendant in failing to repair said defective front porch" after notice of the defect, she suffered certain injuries, stated in detail. At the time of the injuries the plaintiff was conducting a rooming house and a retail stand, and by reason of her injuries she was deprived of large sums of money due to her inability to carry out these enterprises. She was in the exercise of due care. By an amendment to the complaint the written lease was annexed to it as an exhibit. The only provision in this lease touching upon the repair of the building was as follows: "The said lessee covenants with the said lessor to hire said premises, and to pay the rent therefor as aforesaid, to commit no waste, to repair all broken window glass, and to peaceably quit and surrender the premises at the end of the term or sooner termination of this lease, in as good condition as the same are or shall be put in by the lessor during said term, reasonable wear and use thereof, and damages by the elements excepted."

The defendant made a motion to expunge so much of the substitute complaint as stated that the injuries suffered by the plaintiff were the result of the defendant's negligence in failing to repair the porch and as described the injuries and losses she had suffered; and she also demurred to the whole complaint. The trial court denied the motion and overruled the demurrer. Subsequently the plaintiff filed an amendment to the complaint specifically alleging that the defendant negligently permitted the defective condition of the

porch to continue and the defendant filed a motion to expunge this allegation, which the trial court also denied. These pleadings raised certain issues which were also presented in one way or another at the trial and are largely decisive of the appeal. One of the defendant's claims is that, under the allegations of the complaint, there could be no recovery for negligence, that the sole cause of action presented by the facts alleged was in contract, and the plaintiff could not upon such facts recover for any personal injuries or loss of business occasioned by the breaking of the floor.

In *Stevens* v. *Yale,* 101 Conn. 683, 127 Atl. 283, the plaintiff sought to recover for personal injuries suffered when she fell upon a platform leading from a tenement house in which she occupied an apartment, her fall being due to slipping upon ice which had formed by reason of a defect in a water leader. The plaintiff construed her complaint as stating two causes of action, one based upon the fact that the defendant, the owner of the building, had retained the common water drainage system of the building in his exclusive control, and the other upon the defendant's negligence in failing to repair the leader after he had promised to do so. The trial court in its charge, as an examination of the record shows (278 Records and Briefs, pp. 1486, 1505A), submitted both the causes of action to the jury. They returned a general verdict for the plaintiff. Upon an appeal to this court we considered both these claimed causes of action and held that there was no error. It is true that, as we found no error in regard to the first, an error as to the second would not have been sufficient ground for directing a new trial. *Maggay* v. *Nikitko,* 117 Conn. 206, 210, 167 Atl. 816. But we did carefully consider the right of the plaintiff to recover upon the sec-

ond cause of action and, while recognizing that the weight of authority was to the contrary, sustained it. We said (p. 693): "The first claimed cause of action in the complaint in this action is for a breach of duty arising by operation of law out of the relation of the parties, or out of the covenant to repair implied by law. The second claimed cause of action is for a breach of duty arising by operation of law out of the promise to repair a named defect, made during the term of the lease and negligently fulfilled. Both are actions of tort for breach of duty imposed by law. The court did not err in its instruction as to these causes of action." In *Newman v. Golden*, 108 Conn. 676, 678, 144 Atl. 467, we interpreted this decision as holding that "out of a valid enforceable agreement on his [the lessor's] part to make repairs might arise an obligation the breach of which would give rise to an action for negligence." These decisions, unless we are to overrule them, are controlling, as the trial court considered, upon this phase of the case before us.

It is true that it is generally held that in an action for the breach of such an agreement as the one involved in this case damages to the tenant for resulting personal injuries are, as regards an action based upon the breach of that contract, not within the contemplation of the parties when it was made and so not recoverable, and that an action in tort cannot be based upon an obligation of the landlord to repair based upon an agreement on his part to do so. Notes, 8 A. L. R. 765, 68 A. L. R. 1194. The latter proposition is disapproved in the American Law Institute Restatement, Torts (Negligence) § 357. The result of the decisions referred to in the notes cited is, as was pointed out in the *Stevens* case, that where a person rents premises which are out of repair in reliance upon an agreement of the landlord to repair them,

and suffers personal injuries due to a failure of the landlord to keep the agreement, he is remediless. To apply this rule in a case where the want of repair is such as to make likely a personal injury to the plaintiff would be often to deny him the very protection from injury for which he has bargained and which has come about from the defendant's breach of an obligation which he must have reasonably known to have been intended to prevent that injury. We have no need to consider in this case the question whether in such a case the tenant might recover the damages he has suffered in an action upon the contract, for if the plaintiff here was entitled to recover upon the basis of negligence, the damages she sought, certainly upon the face of the complaint, could not be said to be beyond the permissible recovery in an action of that nature.

The question as to when and to what extent a recovery for negligence may be based upon the breach of a contract obligation is one of the moot questions in the law. The instance afforded by the breach by a lessor of a covenant to repair is but one phase of it and cannot be considered otherwise than as a part of the larger problem. It would, perhaps, serve no purpose to go into the historical relationship between contract and tort; see Salmond, Torts, p. 12; rather we adopt Professor Bohlen's statement in his Studies in the Law of Torts, p. 87: "Modern tendency is to make the fundamental nature of the obligation the test as to whether the action is founded upon either tort or contract." As Bohlen points out, Op. Cit., p. 86, in many instances where parties through contract have entered into a definite relationship to each other, as in the instance of a physician and his patient, a lawyer and his client, or a bailor and bailee, the law imposes certain duties arising out of the relationship

itself as to the use of care; these it regards as impliedly entering into the contract itself; but they are in fact more fundamental than the obligation of the contract. See Pollock, Torts, p. 554. This appears very clearly with reference to the situation of the physician and his patient, because the duty to use reasonable care and skill arises where a physician undertakes to treat a patient, even in the absence of any contract. Winfield, Torts, p. 69; 21 R. C. L. pp. 379, 400. In such situations an action based upon the failure to use the required care and skill lies in tort and, if there is a contract, may also lie in contract. *Hickey* v. *Slattery,* 103 Conn. 716, 719, 131 Atl. 558. That no definite catalogue could be made of the situations in which both these remedies may be invoked, is illustrated by our decisions in *Ferrie* v. *Sperry,* 85 Conn. 337, 82 Atl. 577, and *Bridgeport Airport, Inc.* v. *Title Guaranty & Trust Co.,* 111 Conn. 537, 150 Atl. 509, in the first of which we sustained an action of negligence against a civil engineer for failure to use proper care in locating a boundary line upon the plaintiff's land, and in the second of which we sustained an action in contract against a title searcher for a failure to use the requisite care and skill in searching and reporting upon a title.

But the question as to the extent to which a liability in negligence may arise out of a contractual relationship is not confined to such situations as we have mentioned. For instance, suppose a company contracts to build a bridge as a part of a highway and by its negligent performance of its contract, the bridge falls and a traveler is injured; here any liability of the company has its origin in the assumption of a contract obligation, to which the traveler is in no sense a party; but is the traveler for that reason to be denied a remedy? See *O'Brien* v. *American Bridge*

*Co.,* 110 Minn. 364, 125 N. W. 1012; *Smith* v. *Pennsylvania R. Co.,* 201 Pa. St. 131, 50 Atl. 829; *Marvin Safe Co.* v. *Ward,* 46 N. J. L. 19; *Howard* v. *Redden,* 93 Conn. 604, 610, 107 Atl. 509. Or if a manufacturer of canned food products negligently permits a foreign substance to be included whereby one who purchases a can from a retail merchant is injured, is the purchaser debarred of a remedy in negligence, because the can has come into his hands through a series of contractual transactions? In *Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 264, 161 Atl. 385, we held that the purchaser had a remedy in negligence against the manufacturer. If liability for negligence arising out of contract relationships is to be narrowed to established relations such as those we have mentioned, many cases where relief has been given for negligence growing out of a contractual relationship would be excluded. Thus in *Olesen* v. *Beckanstin,* 93 Conn. 614, 107 Atl. 514, we held the defendant, who had installed a heating plant in the plaintiff's house, liable for negligence in failing to draw off the water, thus permitting it to freeze in the pipes and burst them. In *Gannon* v. *Sisk,* 95 Conn. 639, 112 Atl. 697, where the plaintiff had ordered a carriage, we held the defendant negligent in failing to furnish a safe coach, safe horses and a competent driver. In *Breed* v. *Philgas Co.,* 118 Conn. 128, 171 Atl. 14, where there was an explosion of gas through the negligence of the servant of the defendant in filling a tank, we sustained a recovery by the purchaser for damages to the property and by the administrator of a servant in the house for her death. In *Wright* v. *Blakeslee,* 102 Conn. 162, 128 Atl. 113, we held a defendant, who was repairing a highway under contract, liable in negligence for injuries to a traveler.

Negligence occurs where one under a duty to exer-

cise a certain degree of care to avoid injury to others fails to do so. *Bill* v. *Smith,* 39 Conn. 206, 210; *O'Neil* v. *East Windsor,* 63 Conn. 150, 153, 27 Atl. 237; *Beers* v. *Boston & Albany R. Co.,* 67 Conn. 417, 426, 34 Atl. 541. In *Farrel* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 246, 21 Atl. 675, 22 id. 544, we said: "The duty is imposed by law, either directly by establishing special or general rules of conduct binding upon all persons, or indirectly through legal agreements made by the parties concerned." We recently pointed out that negligence may be the outgrowth of precedent contractual relationship, but that it may also arise in situations where there is no thought of any such underlying relationship, as in the ordinary case where two automobiles meet in the highway, and we added: "Broadly considered, it might be said that the duty to exercise reasonable care arises whenever the activities of two persons come so in conjunction that the failure to exercise that care by one is liable to cause injury to the other." *Swentusky* v. *Prudential Ins. Co.,* 116 Conn. 526, 533, 165 Atl. 686. Brett, M. R., in *Heaven* v. *Pender,* L. R. 11 Q. B. D. 503, 509, thus stated the principle: "Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." See 1 Street, Legal Foundations, p. 92; Pollock, Torts, p. 554.

In the final analysis this is the real basis upon which the law imposes upon a physician, a bailee, an attorney, and other persons standing in such relationship, an obligation to exercise a certain degree of care

or skill. It is because he is entrusted with the person or property of another or has assumed the performance of an act which may affect the rights of another under such circumstances that, unless he uses proper care, that other will suffer injury, that the law imposes or implies a duty to use such care. In other words, the particular facts which bring two persons into a relationship to each other are not necessarily controlling, but the true test is, speaking generally, being in that relationship, are the circumstances such that one, in the performance of some act within the scope of that relationship, unless he uses proper care, is likely to do injury to the person, property or rights of the other. "If a man will set about actions attended with risk to others, the law casts on him the duty of care and competence. It is equally immaterial that the defendant may have bound himself to do the act, or to do it competently. The undertaking, if undertaking there was in that sense, is but the occasion and inducement of the wrong." Pollock, Torts, p. 554. It is in this sense that negligence grows out of contracts as nuisance may grow out of negligence. See *Hoffman* v. *Bristol,* 113 Conn. 386, 393, 155 Atl. 499. Where there is a precedent relationship, all that is necessary to furnish a basis for an action of negligence is that there be present the elements necessary to establish such a cause of action, and if that is so, that that relationship is one of contract is no sound reason why the action should not lie.

Of course a mere breach of the contract would not afford a basis for a recovery in tort, but the necessary elements to establish negligence must be shown; nor could such a cause of action be based upon an agreement not supported by a consideration. *Newman* v. *Golden,* 108 Conn. 676, 678, 144 Atl. 467. Care must also be taken not to enlarge the scope of the promisee's

undertaking beyond that in his contract; *Rumberg* v. *Cutler,* 86 Conn. 8, 84 Atl. 107; Salmond, Torts, p. 10; Amer. Law Institute Restatement, Torts (Negligence) § 357; but the scope of the undertaking may be such that the duty to use care will extend beyond the immediate promisee in the contract to others, where injury is likely to result to them from a performance of the assumed duty without the use of proper care. Thus in *Wright* v. *Blakeslee,* supra, we approved an instruction that contractors repairing a highway, as regards a traveler upon it, were under "the duty of using reasonable care in the performance of the work that they were carrying on, so as not to create and maintain an obstruction upon the sidewalk that was a source of danger, or likely to prove a menace, or cause an injury to persons who are lawfully using such highway, and who are in the exercise of due care." Coming more closely to the allegations of the complaint before us, we have held that where a landlord voluntarily assumes control of a portion of a building and a tenant is injured by his failure to keep it in proper repair, the former can be held liable in negligence. *Killian* v. *Logan,* 115 Conn. 437, 162 Atl. 30; *Aprile* v. *Colonial Trust Co.,* 118 Conn. 573, 173 Atl. 237; *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 175 Atl. 780. If this be so, it would be strange if a similar liability would not rest upon the landlord where he has entered into a contract with the tenant to keep the leased premises or a part thereof in repair. Our conclusion, therefore, is that if there rested upon the defendant, as alleged in the complaint, the contractual duty to replace the floor of the front porch, she might be liable in negligence, upon proof of the necessary facts, for her failure to perform that duty.

This conclusion disposes of the claims of law based upon the denial of the motions to expunge and the

overruling of the demurrer, except the ground stated in the latter, that the agreement to repair became merged in the written lease between the parties, and hence no contractual liability rested upon the defendant. The written lease contained no express covenant on the part of the plaintiff to repair the premises except as to window glass, and indeed is strongly suggestive of an obligation to repair resting upon the defendant because the plaintiff covenanted to surrender the premises when the lease terminated, not in as good condition as when she took possession, but "in as good condition as the same are or shall be put in by the lessor during said term." Whether the plaintiff might prove the oral agreement to replace the floor of the porch, would depend upon the question whether the parties intended that the written lease subsequently made should embody the entire agreement. *Cohn* v. *Dunn,* 111 Conn. 342, 149 Atl. 851; *State Finance Corporation* v. *Ballestrini,* 111 Conn. 544, 547, 150 Atl. 700. The allegations of the complaint furnish a sufficient basis upon which evidence might be offered to prove that the agreement to repair was intended by the parties as a collateral and independent agreement not merged in the written lease. The trial court was correct in denying the motions and overruling the demurrer.

The court charged the jury very clearly that the plaintiff could recover only upon proof of an agreement to make repairs as alleged in the complaint and the further instructions were based upon the assumption that the jury had found this to be so. No complaint is made of the trial court's charge as to the elements necessary to constitute a cause of action in negligence, which closely followed the opinion in the *Stevens* case. The defendant pleaded that the plaintiff had assumed the risk of injury from the defect in

the porch, and assigns error in the failure of the trial court to give certain instructions she requested, and in a certain portion of the charge as given, which dealt with this defense. If there were such an agreement to repair as was alleged, the ordinary rules as to the assumption by a tenant of obvious defects in the leased premises would not apply. In *Freedman* v. *Hurwitz,* 116 Conn. 283, 287, 164 Atl. 647, we said: "Because the essence of the doctrine is the assumption of the risk, the injured person must or ought reasonably to have perceived that it existed, and because it is the risk which is assumed the injured person must have appreciated it, or the situation must be such that he ought reasonably to have appreciated it and realized that unless he took steps to protect himself he would be liable to injury. . . . Moreover, the incurring of the risk must be really voluntary. If the continued exposure of the injured party to the risk is due to his inability reasonably to escape, after he becomes or should become aware of it and appreciates or should appreciate the danger, or if the continuance of his subjection of himself to it is the result of influences or circumstances which are the real inducement of his course of conduct, the doctrine does not apply."

The request to charge that upon the allegations of the complaint the plaintiff must be held to have assumed the risk of injury could not properly be given because all that appears in it is that she knew of the general defective condition of the porch, and nothing is alleged as to her knowledge of the particular defect causing the accident, nor as to her comprehension of the risk of injury from it. Risks are not assumed by a plaintiff unless he has, or ought to have, knowledge and comprehension of the peril to which he is exposed, and, having such knowledge and comprehension, he continues of his own volition to subject himself to that

peril. *Tenney* v. *Baird Machine Co.,* 87 Conn. 119, 126, 87 Atl. 352. Nor would it be alone sufficient to show that she assumed the risk, that the plaintiff knew of the particular defect in the porch and the likelihood of injury if she walked over it, which was the basis upon which the trial court was also requested to charge that the plaintiff had assumed the risk. The test is comprehension of the risk. "Did he comprehend these things and their significance as affecting his safety? If not, he did not comprehend the risk to which he was exposed. There are many degrees of danger. Knowledge of danger in one degree and knowledge of it in a higher degree are not the same thing. The comprehension of risk, entailing upon a servant liability for consequences to him through continuing in his employment, involves an appreciation of the character and extent of it which furnishes him an adequate basis for voluntary decision as to its assumption." *Tenney* v. *Baird Machine Co.,* supra. Whether there was such a comprehension is ordinarily a question of fact. "A fact of this character depends, as a rule, upon the existence of many other facts and the proper inference to be drawn from them, and is ordinarily a question of fact or one of mixed law and fact, and does not become a question of law unless the only logical and reasonable conclusion to be drawn from the evidence is that the plaintiff with knowledge and appreciation of the risk voluntarily encountered it." *Gerardi* v. *Driscoll,* 88 Conn. 16, 21, 89 Atl. 892. Moreover, if the plaintiff was induced to continue to use the porch by the promises of the defendant to repair it and it was not so imminently and obviously dangerous that a person of ordinary prudence would decline to use it at all until it was repaired, in other words, if the plaintiff was not guilty of contributory negligence in using it, she would not be held to have

assumed the risk. *Elie* v. *Cowles & Co.*, 82 Conn. 236, 73 Atl. 258; note, 4 Amer. & Eng. Anno. Cas. 153, 154. There was no error in refusing to charge as requested.

When we turn to the portion of the charge relating to this matter, which is assigned as error, we find that it was limited to the statement that the fact that the lessee had a more intimate knowledge of the conditions of the property than the lessor, would not impose a full assumption of risk upon her, and an instruction as follows: "There is a well-defined line of distinction between the assumption of risk and that of contributory negligence. Both may exist in a given case, or one may exist without the presence of the other. Assumption of risk on the part of a plaintiff exists where none of the fault for the injury rests with the plaintiff, but where the plaintiff assumes the consequences of injury occurring without his fault, injury occurring through the fault of the defendant, fault of a third person, or fault of no one. Contributory negligence consists of where some act of the plaintiff was the proximate cause of the injury. The rule is: 'Volenti non fit injuria.' In its widest significance it assumes one who has invited an act done to him then cannot when he suffers from it complain of a wrong." Only the two last sentences give the jury any guidance as to the conditions under which assumption of risk would exist and they went no farther than a charge that if one "has invited an act done to him" he cannot complain. Such an instruction was inadequate to afford a basis for determining whether or not the doctrine applied in this case. This charge failed adequately to explain to the jury the essentials necessary to establish an assumption of the risk by the plaintiff.

As this necessitates a conclusion that there was error, we consider only such other claims of error as are likely to be involved in a new trial. The fact that the plain-

tiff used the porch knowing it to be defective, would not charge her with contributory negligence as matter of law; whether she was thus negligent would depend upon the extent of her knowledge, actual or constructive, of the conditions of the porch causing the injury and the likelihood that the portion of the porch floor which broke would give way; *Gipstein* v. *Kirshenbaum,* 118 Conn. 681, 686, 174 Atl. 621; and the care which she used in crossing it. *Blake* v. *Waterbury,* 105 Conn. 482, 136 Atl. 95. Upon this record at least, the issue can only be regarded as presenting a question of fact. If the defendant proposed to rely upon a waiver of the promise of the defendant to repair the porch, she should have pleaded it; *Goldner* v. *Polak,* 108 Conn. 534, 537, 143 Atl. 882; but that aside, if the jury believed that the plaintiff, after entering into possession, repeatedly pressed the defendant to carry out her promise to make repairs, there could hardly be a basis for a conclusion that by taking possession before they were made, she waived her right to enforce that promise. The plaintiff's request, after taking possession, to the defendant to perform her promise to make repairs, would carry with it an implied license to her to enter for the purpose. The fact that the defendant repaired the porch after the accident was admissible to corroborate the claim of the plaintiff that she had agreed to do so, upon the same basis that evidence of repairs made by a lessor after an accident to a lessee, are admitted to show that the portion of the premises in question were retained by the lessor within his control. *Vinci* v. *O'Neill,* 103 Conn. 647, 652, 131 Atl. 408.

There is error; the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.