[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff Pioneer Builders of Ellington, Inc. (hereinafter "Pioneer") alleges I that the defendant Landie Contractors, Inc. (hereinafter "Landie") was negligent and/or breached its I contract in providing excavation services for a residence being constructed in the town of Coventry
In September 1993, Pioneer, as the general contractor, contracted with Douglas and Nadine Say to construct a dwelling on property owned by the Says knows as 76 Zeya Drive in Coventry. Pioneer then subcontracted with Landie to do the site work which included excavating the foundation hole, installing footing drains, backfilling the foundation and boxing the driveway.
In October 1993, Landie commenced work at the site and on or about November 12, 1993, the foundation was poured. On or about November 23, 1993 Landie commenced installing the footing drains and completed that work the following day, November 24, 1993. On November 24, 1993, Robert Bach, the building inspector for Coventry inspected the work and upon approving it, authorized Landie to backfill the foundation. November 25, 1993 was the Thanksgiving holiday and on Friday. November 26. 1993 Landie backfilled the foundation using on site material taken from the excavation hole.
On or about January 21, 1994, the framing subcontractor called Thomas Savage, the president of Pioneer, to report a problem with the foundation. It was determined that the foundation walls were all bowed or pushed inward, had multiple crackings and eventually it was determined that the foundation CT Page 2681 had failed requiring the unfinished house to be jacked up, the foundation removed and a new one installed.
Pioneer claims Landie was responsible for the foundation failure and consequent damages. Other facts will be discussed as appropriate to this decision.
A defendant may be liable in negligence for breach of a duty which arises out of a contractual relationship. Urban v. Hartford Gas Co.,139 Conn. 301, 305 (1952). Liability may arise from negligence occurring in the course of performance of a contract even without a breach of the contract. Dean v. Hershowitz. 119 Conn. 398, 409
(1935). There is implied in every contract for work or services, a duty to perform it skillfully, carefully and in a workmanlike manner. 17A Am.Jur.2d, Contracts § 627. The standard is that degree of skill, efficiency and knowledge possessed by those of ordinary skill and competency in the particular field. Scribner v. O'Brien, Inc.,169 Conn. 389, 406 (1975).
It is, of course, the burden of the plaintiff to prove the allegations of its complaint by a preponderance of the evidence, which means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that it does not preponderate on the side of the plaintiff, the plaintiff has not met its burden of proof.
Turning now to the specific claims against Landie, Pioneer alleges the following:
 A. It excavated the foundation hole in a negligent manner which did not permit the footings to be installed in a proper manner.
 The plaintiff did not prove either that the foundation hole was negligently dug, or that the footings were improperly installed. The footing drains were inspected by the Building Inspector prior to approving the backfilling. He credibly testified that he saw nothing wrong with the drains.
B. It backfilled the foundation in a negligent manner.
 C. It backfilled the foundation at a time that was premature and in direct conflict with the Third party Plaintiff's instructions and at a time when the Third Party Plaintiff was unable to supervise said backfilling;
D. It backfilled the foundation with materials that it knew or should CT Page 2682 have known were wet or moist which prevented the foundation walls from improperly curing;
 E. It compressed backfilled materials against the foundation walls so as to put undue stress and pressure on the foundation walls;
 F. It pushed backfill materials against the foundation walls or struck the foundation walls with backfill equipment so as to damage said foundation walls; and
 G. It failed to conform to reasonable standards in the backfilling of said foundation walls which resulted in said wall cracking and failing to cure.
Claims B thru G above are all related to backfilling the foundation and will be discussed together. In addition to these claims the plaintiff has alleged that Landie had agreed to use gravel as backfill material, but failed to do so, and that the failure to use gravel was a proximate cause of the foundation failing.
The parties are in disagreement as to whether they contracted to backfill the site with gravel. Mr. Savage claims they agreed that gravel was called for because the site was wet. William Phillips, the president of Landie has denied any agreement or even any request by Savage to use gravel to backfill. The agreement between the parties (Exhibit 5) does not specify gravel to be used for backfill, nor does the plot plan which Landie used in preparing its proposal. Pioneer would have the Court infer that, because the proposal (Exhibit 5) sets out approximately 85 yards of gravel and whereas only 36 yards was billed and used in connection with the driveway, the balance of approximately 49 yards estimated to be used corroborates the claim that it was to be used for fill. The defendant, however, claims this was only an estimate, that it didn't know how much gravel the driveway might take, or whether gravel might be needed for other uses, and that gravel was never specified or requested.
Savage testified that he assumed gravel was used to backfill and was surprised to see, when the original foundation was dug out, there was no gravel. It is, however, noted that Landie billed Pioneer for 36 yards of gravel on December 17, 1993, which was at least one month before the foundation problem was discovered. Pioneer never questioned the disparity between the 85 yards estimated and 36 yards billed although the billing should have alerted Pioneer in Mid-December that gravel was used only in the driveway base. Also, there was credible testimony that contractor typically use on-site material dug from the excavation hole for backfill unless special circumstances such as a very wet site make it necessary to use the CT Page 2683 better draining gravel material. The Court concludes there was no meeting of the minds between the parties that gravel was to be used to backfill the foundation, whatever the expectations of each may have been. There is insufficient evidence to establish this claim.
There remain the issues of negligent workmanship.
On Wednesday, November 24, 1993, the building inspector approved backfilling. Both Savage and Phillips were aware of that. On that Wednesday Phillips recommended to Savage that stone be brought in to use as base material in the cellar and Savage agreed to that. Savage also told Phillips that he was going away for the Thanksgiving weekend. Savage testified he assumed no work would be done until he returned on Monday. Phillips did not share that assumption and on Friday, November 26th, Landie returned to the site to backfill the foundation. Although Savage had assumed no work would be done until the following Monday, he did not tell Phillips to hold off the backfill until then.
On Friday, the day was "sunny and nice". The fill was not wet and there was nothing unusual 11 about the weather or the material. Lucas Hoar, an employee of Landie, a person with substantial construction experience, routinely backfilled the foundation, a project which took a good part of the day. Thus as to plaintiff's claim `C' above, the Court finds Landie did not backfill the site prematurely and in conflict with Pioneer's instructions, nor was the material used wet or moist (Claim D). In addition to Hoar's testimony, the building inspector, who was on site two days before, saw nothing unusual about the site. He saw the on-site material piled up in the area. It was the typical soil type for that area and, as he also testified, excavation material is typically used backfill, as was done in this case.
As to Claim (E), there was no evidence that Landie compressed backfilled materials against the foundation walls as to put undue stress and pressure on the walls. The evidence shows that the foundation failed because of frost buildup and pressure some two months later in January which literally moved walls inward and caused cracking.
Pioneer further claims that Landie struck the walls of the foundation with its equipment, specifically a bulldozer and an excavator resulting in damage.
On Friday afternoon (November 26th), after Hoar had installed the backfill material with a backhoe, Phillips used a bulldozer to level the fill and grade the slope away from the foundation. In so doing he scraped the foundation with the edge of the bulldozer blade. He told Savage he had CT Page 2684 done so when he next saw him. There was no evidence that this incident contributed to the later failure of the foundation. It was not a hard head-on contact and, apparently, it is not uncommon for equipment to scrape against a foundation in this fashion. While it is very likely an exaggeration the building inspector testified that probably every wall is struck by a bulldozer blade. As to the other alleged contact between the excavator and the foundation wall, even if true, again there was no credible evidence that such contact was a causal factor in the subsequent failure of the foundation. That failure was caused by frost heave, not any contact with the equipment. It is noted that the house was partially framed before the manifestation of foundation damage. The framers would have likely noticed any structural damage when they started work, if these claims were valid.
Lastly, the plaintiff claims Landie failed to conform to reasonable standards in backfilling the foundation. The Court concludes the evidence is lacking to support that claim. From the evidence and for the reasons already discussed, the court concludes that factors beyond the control of the defendant proximately caused this unfortunate problem. There seems to have been a convergence of natural events together with customary (and ordinarily benign) building practices which came into play here.
As stated, the soil on this site was typical of the soil in the general area. It was the usual practice to use on-site soil from the excavation hole for backfill in this area. The lot, while somewhat wet, was not unusually so. When Landie backfilled the material was dry and suitable for backfilling. On the 28th and 29th of November approximately 2 1/4" of rain fell. (The backfill was done on November 26th). That heavy rain caused substantial water to accumulate in the ground. On Monday, November 29th the site in question was muddy (as were other sites under construction). Thereafter December and January were cold months with temperatures at times below freezing resulting in a substantial frost and also slowing down the cure rate for fresh concrete.
The standard of care to which Landie is held is that of ordinary skill and competence in its field. Dr. Welti, a soil scientist, opined that the soil would have moderate to locally severe frost susceptibility, if there was a water source. But at the time Landie backfilled, according to Mr. Bach, there was nothing unusual about the site as far as wetness.
The soil was generally the same as other lots in the area and Landie did what site contractors typically did, that is backfill using material dug from the foundation hole. That was the standard of ordinary skill and competence. While Pioneer suggests that the well head was flowing, which was evidence of a water source contributing to frost build-up, the well was drilled in February 1994, the month following the failure of the foundation CT Page 2685 and some two and one half months after Landie completed its site work.
From the evidence, it appears more likely that the backfill material became wet after the backfilling was complete. In addition to the heavy rains, the winter of 1993-94 was severe and the forces of nature along with other generally accepted construction practices (which would otherwise be benign) contributed to the failure of the foundation. To cite some of those ordinary practices, the foundation contractor (Lloyd) had water added to the concrete mix in order to make it flow better, a normal practice, but one which lengthens the cure rate of the concrete and a practice which may allow the sand and concrete to separate. As of February 11, 1994, the concrete was at only 58% of its prescribed strength according to Mr. Lackman, who later tested it. Cure rate is a function of time, temperature and composition of the mix and in this instance the cold weather protracted the cure rate. Also, steps in the construction process such as installing the decking, pouring the cellar floor or even temporary bracing, while not normally done before the backfilling might have given added support to the foundation. While normally not harmful, given the season and the severity of the weather in this instance, these practices contributed to or exacerbated the problem. Indeed the plaintiff's own expert structural engineer, Carl Cianci, who was called to the site in March 1994, later testified at deposition that the primary reason for the inward bowing of the foundation was that the backfill was done before the framing, and that was the typical construction practice. Also, at his deposition he attributed the lack of concrete strength as a factor as well as the nature of the backfill material. (His trial testimony differed to the extent that he now believes that frost heave was the primary cause).
In summary, the plaintiff has not met its burden of proving by a fair preponderance of the evidence that the defendant either breached its contract of that it acted negligently in the performance of its work.
Judgment, therefore shall enter for the defendant.
Klaczak, J.