[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The plaintiff has brought this action in four counts. The first two counts are as against the dental surgeon and his P.C. The third and fourth counts are against Bristol Hospital.
The claims against Bristol Hospital allege that it negligently referred the plaintiff to the dental surgeon when it knew that it was dangerous to do so in that the dental surgeon was unqualified to treat the plaintiffs ward.
The defendant moves for summary judgment claiming that there was no physician-patient relationship and further that there is no genuine issue of fact as to whether the injuries were reasonably foreseeable as to this defendant. The case against the dental surgeon has been settled and there remains the two counts against the hospital.
 I. CT Page 6834 Physician-Patient Relationship
The facts which brought the plaintiff to contact Bristol Hospital, through his wife, appear through the testimony of Mrs. Galvin. On April 5, 1996, Good Friday, the plaintiff attempted to contact a Manchester oral and maxillofacial surgery organization to have a tooth pulled. The office was closed, but would open on Monday. U-Conn Health Center declined to render treatment (extract the tooth) in response to the plaintiff (wife's) phone call. St. Francis Hospital also told her that no one would be able to extract the tooth until after the holiday weekend.
Plaintiff's wife then called Bristol Hospital.
A female in the emergency department told Mrs. Galvin that "Dr. Lucey was the dentist on call." The next day Mrs. Galvin phoned Dr. Lucey. Dr. Lucey extracted the tooth that day. Severe complications developed thereafter.
The defendant takes the position that there was no physician-patient relationship between the hospital and Mr. Galvin. It cites the fact that Mrs. Galvin, not Mr. Galvin, called the hospital on behalf of her husband. The court fails to see the significance of this fact, as it is most common for the close relatives of sick or injured persons to make medical contact for their spouses, children, parents and the like.
The defendant's affidavit, February 3, 1999 by the director of medical records, states that there is no record that Edward Galvin was ever seen at Bristol Hospital on April 5, 1996; that there is no medical record or document that indicates that Edward Galvin was ever a patient at Bristol Hospital on April 5, 1996; that no bill was ever generated; that there was no patient-health care provider relationship; and that there is no record that Edward Galvin ever called Bristol Hospital on April 5, 1996. (It is not clear as to whether the defendant denies that Mrs. Galvin called.) This court does not see a significance as to who called. If it is contested that no one called, that is a question of fact. In essence the defendant's affidavit does not conclusively rebut the plaintiffs position as to the phone call or as to the advise the plaintiff's claim to have received.
"Broadly considered, it might be said that the duty to exercise reasonable care arises whenever the activities of two persons are so in conjunction that the failure by one to exercise CT Page 6835 that care is likely to cause injury to the other." Hedderson v.Robert Hall of Waterbury. Inc., 145 Conn. 410, 413 (1958); Barsoiv. Sparico, 141 Conn. 366, 370 (1954).
Questions of this nature cannot be answered simply. Obviously, the Physician-Patient relationship must be determined in accordance with the above cited principle. It appears from the affidavits in this case that neither St. Francis Hospital nor the U-Conn Health Center have an oral surgeon on call during the weekends. This would appear to be some indication that medical practice among local hospital does not require that an oral surgeon be on call or available during the weekends.
It has long been the law in this state that if one voluntarily assumes to perform an act and does so negligently he may be liable for the injury thereby sustained.
 "If one undertakes to perform an act and performs it negligently or in such manner as to create a nuisance and another is injured thereby, it makes no difference whether the motive leading to the performance of the act was the carrying out of a contractual obligation or whether the act was performed gratuitously and without compensation." Zatkin v. Katz, 126 Conn. 445, 450 (1940).
For further application of this principal to the medial profession see Dean v. Hersowitz 119 Conn. 398, 406 (1935).
Any claim that the defendant may have had no duty to give specific advice in the first instance does not resolve the question of whether the giving of advice under these circumstances constitutes the assuming of a legal duty. It is the relationship between the parties rather than the assigning of arbitrary labels which determines the rights and duties of the parties.
The motion for summary judgment on the basis of a claim of no physician-patient relationship is denied.
 II.
The claim that the injuries caused to the plaintiff were not foreseeable.
It is the defendant's position that the injury sustained by the plaintiff, Ludwig's Angina, was not reasonably foreseeable as CT Page 6836 concerns this defendant. The negligence alleged, as concerns this defendant, is that:
 (a) they referred the plaintiff and plaintiffs ward to William J. Lucey, D.D.S. when they knew or should have known that he was unqualified to treat the plaintiffs ward for a tooth extraction and the potential complications of the same, including Ludwig's angina;
 (b) they referred the plaintiff and plaintiffs ward to William J. Lucey, D.D.S. when he was unqualified to treat the plaintiffs ward in one or more of the following ways:
 (i) in that he had not successfully completed his educational training, including his undergraduate education;
(ii) in that he was not board certified in oral surgery;
 (c) they failed to properly credential William Lucey, D.D.S. when they knew in the exercise of reasonable care they should have known that it was dangerous not to do so;
 (d) they failed to warn the plaintiff and plaintiffs ward of the danger of sustaining harm and/or injury as a result of receiving treatment from William Lucey, D.D.S. due to his inadequate qualifications and credentialing;
 (e) they failed to warn the plaintiff and plaintiffs ward of the danger of sustaining harm and/or injury as a result of receiving treatment from William Lucey, D.D.S. due to Dr. Lucey's practice of administering anesthesia in his office without adequate assistance.
The parties have not specifically joined issue, in this motion, as to whether or not the doctor possessed the level of education, experience and training as to properly qualify for privileges at the hospital. As to what criteria of proof will be necessary to support the plaintiff's contention, or to negate it, will be for a future day. The court must view the evidence in a light most favorable to the non-moving party. See Town and TrustCompany v. Benson, 176 Conn. 304, 309 (1978). The pleadings and the affidavits are to be viewed in a light most valuable to the non-moving party (P 309).
The plaintiff claims that the doctor was not qualified to treat the plaintiffs ward Mr. Galvin and as a result thereof he developed Ludwig's Angina which, improperly treated, resulted in CT Page 6837 devastating medical consequences. Hence, the threshold question, as to foreseeability is whether, assuming lack of qualifications is the development of this condition from alleged improper treatment, resulting in these injuries, foreseeable.
Assuming again lack of qualifications, is the development and complication, untreated, of Ludwig's Angina foreseeable. The doctor's testimony, by deposition, indicates that prior to the date of April 8, 1996 he had seen two or three patients with Ludwig's Angina each year. An article appearing in a medical journal submitted by the plaintiff, discussing both the condition and its history of being recognized, medically, dating back to ancient Greece. The article claims that the condition appears in young adults, neonate, and children and the elderly. Dental extractions may trigger the disease.
A review of the evidence submitted compels the conclusion that Ludwig's Angina would not be categorized as a rare or practically unheard of complication from tooth extraction surgery. The defendant cites Lodge v. Amret Sales Corp.,246 Conn. 563 (1998) for the proposition that it was not foreseeable that Ludwig's Angina would develop and be improperly treated if the dentist was incompetent. (It should be noted that in Lodge,
supra, P 576 (footnote 11) the incidents reported there, five brake failures nationwide in ten years was certainly a rare occurrence).
The test of foreseeability is not of course that the precise harm be foreseen, but rather it is whether harm of the general nature of that suffered was likely to result. Jaworski v.Kiernan, 241 Conn. 399 (1997).
As anticipated in Lodge v. Amret Sales Corp., supra, footnote 16, P 565, the court takes care to note that the Supreme Court determined lack of foreseeability solely upon the extraordinary and peculiar facts of that case, while still recognizing the general principals of foreseeability in other factual circumstances.
The court denies the defendant's motion for summary judgment based upon the claim of lack of foreseeability.
L. Paul Sullivan, J. CT Page 6838